(69 Misc. Rep. 215.)

### LEE v. O'MALLEY et al.

(Supreme Court, Special Term, New York County. October, 1910.)

1. BANKS AND BANKING (§ 3*)—REGULATIONS.
    The business of banking is subject to regulation by the state under the general police power.
    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 9; Dec. Dig. § 3.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CONSTITUTIONAL LAW (§ 209*)—UNIFORMITY OF LAWS—VALIDITY OF CLAS-
SIFICATION.

A classification to conform to the equality clause of the fourteenth
amendment to the United States Constitution must be upon some rea-
sonable ground, and involve some difference which bears a proper rela-
ion to the attempted classification, and not a mere arbitrary selection.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 678;
Dec. Dig. § 209.*]

3. CONSTITUTIONAL LAW (§ 230*)—EQUAL PROTECTION OF LAWS—UNIFORMITY
—VALIDITY OF CLASSIFICATION.

Laws 1910, c. 348, relating to private banking, provides that no person
shall engage in the business of receiving deposits for safekeeping or
transmission, or for any other purpose, without a license, to be granted
at the discretion of the State Comptroller, application for which shall
be posted for two weeks. The act exempts private bankers where
the average amount of each deposit during the preceding fiscal year
shall not be less than $500, and private bankers who file with the Comp-
troller a bond of $100,000 in cities of the first class or $50,000 else-
where, and makes any violation of the act a misdemeanor. Held, that
the act is violative of the equality clause of the fourteenth amendment
to the United States Constitution, as involving an unjust and unequal
classification.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 687;
Dec. Dig. § 230.*]

4. CONSTITUTIONAL LAW (§ 62*)—DELEGATION OF LEGISLATIVE POWER.

The statute is also objectionable as investing the State Comptroller
with an arbitrary discretion in issuing a license thereunder.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 94–
102; Dec. Dig. § 62.*]

Action by James Lee against Edward R. O'Malley and others for an
injunction. Injunction granted.

See, also, 125 N. Y. Supp. 772.

Ernest R. Eckley, for plaintiff.

Edward R. O'Malley, Atty. Gen. (Louis Marshall and Edward H.
Letchworth, of counsel), for defendants.

Archibald R. Watson, Corp. Counsel, for William F. Baker.

The action has been discontinued as against the defendant Baker
since argument.

BIJUR, J. This is an application for an injunction against the offi-
cials of the state and city to restrain the enforcement of Laws 1910,
c. 348, being an amendment to the general business law in relation to
private banking.

This act provides that no person shall engage in the business of
"receiving deposits of money for safekeeping or for the purpose of
transmission to another, or for any other purpose," without having
theretofore procured a license. Section 25. The transaction of busi-
ness without such license or in violation of any of the provisions of
the act is made a misdemeanor. Sections 27, 29 f. There is a further
penalty of $100 per day for failure to make the reports required. Sec-
tion 29. Persons subject to its provisions are also required to furnish
quarterly statements to the State Comptroller. The license, for which
there is a fee of $50, does not issue automatically, but is granted only

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

in the discretion of the Comptroller. As a prerequisite the applicant is required to file a statement of his assets and liabilities, to deposit $10,000 either in cash or securities, and to furnish a bond in an amount of from $10,000, to $50,000, as may be fixed by the Comptroller.

Section 29d of the act exempts from its provisions five classes, with the first three of which, however, we are not at the moment concerned. The fourth class exempted comprises private bankers "where the average amount of each sum received on deposit or for transmission in the ordinary course of business during the fiscal year preceding shall not be less than $500." The fifth class consists of private bankers who file with the Comptroller a bond in the sum of $100,000 in cities of the first class or of $50,000 elsewhere. The injunction is sought on the ground that the act is unconstitutional; eight separate reasons for that claim being put forward. Practically all the serious objections may be summed up in the contention that the act violates section 1 of the fourteenth amendment of the Constitution of the United States, in that it deprives persons of their property without due process of law, and denies them the equal protection of the laws. More specifically, it is urged that the act exceeds the police power of the state, and that it imposes unequal conditions and creates arbitrary classifications. It is pointed out, also, that the discretion granted to the State Comptroller to issue or withhold the license is arbitrary and therefore unconstitutional.

At the outset, I have been met, on behalf of one of the defendants, by the objection that equity should not interfere to enjoin the enforcement of the criminal law, but that the plaintiff should be left to his ordinary remedy at law, namely, the setting up of the unconstitutionality of the act in the event that he be prosecuted criminally for its violation. I am inclined to think that this objection is well taken. See Delaney v. Flood, 183 N. Y. 323, 76 N. E. 209, 2 L. R. A. (N. S.) 678, 111 Am. St. Rep. 759; Eden Musee American Co. v. Bingham, 125 App. Div. 780, 110 N. Y. Supp. 210; Davis v. American Soc. for the Prevention of Cruelty to Animals, 75 N. Y. 362.

There were other grounds for the interposition of the court in the Consolidated Gas Company Cases (C. C.) 146 Fed. 150, 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 656, as, for example, actual or threatened action of the Gas Commission claimed to amount to confiscation of the company's property.

The defendant, however, who makes this objection in the case at bar, has been eliminated by discontinuance, and the remaining defendants ask for a determination of the application on its merits. While I have some doubt whether the court should proceed in this way, nevertheless, in view of the great public interest in the question and following the precedent set by the Supreme Court of the United States in a somewhat similar case and under analogous circumstances (see Pollack v. Farmers' Loan & Trust Co., 157 U. S. 429, 554, 15 Sup. Ct. 673, 39 L. Ed. 759, also, 157 U. S. 608–612, 15 Sup. Ct. 912, 39 L. Ed. 1108), I have concluded to consider the constitutionality of the act. It can hardly be doubted at the present time that the business of banking is of such nature as to warrant its regulation by the state under the

general police power. Attorney General v. Utica Insurance Co., 2 Johns. Ch. 375; Same v. Same, 15 Johns. Ch. 358; Curtis v. Leavitt, 15 N. Y. 9; and a long line of cases in other states ending with the recent decisions of Weed v. Bergh, 141 Wis. 569, 124 N. W. 664, 25 L. R. A. (N. S.) 1217, and McLaren v. State, 141 Wis. 577, 124 N. W. 667.

We come, then, to the question of classification. In the first place, it is to be noted that the statute distinguishes between persons of different degrees of wealth in that the conduct of his business is restricted substantially to persons who have a minimum of $20,000 rather than to persons of approved probity or sound judgment, and that a person who can procure a bond of $100,000 may remove himself entirely from the restraints of the act. This is a novel standard in our legislation. "A classification in order to be relieved from the reach of the equality clause of the fourteenth amendment must be upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection." Gulf, Colo. & S. F. R. R. Co. v. Ellis, 165 U. S. 150, 165, 17 Sup. Ct. 255, 261, 41 L. Ed. 666. This rule is subject to the limitation laid down by Judge Vann in People ex rel. Farrington v. Mensching, 187 N. Y., where, at page 22, 79 N. E. at page 888 (10 L. R. A. [N. S.] 625), he says:

"By this we do not understand that great court to mean that the relation must necessarily be 'reasonable and proper' according to the judgment of reviewing judges, but that the court must be able to see that legislators could regard it as reasonable and proper without doing violence to common sense. In other words, there must be enough reason for it to support an argument, even if the reason is unsound."

I have not been referred to any case in which a classification based solely on degrees of wealth has been held valid; but I can see that from certain points of view, in the banking business, as for example in considering ability to issue credits, the possession of wealth may be regarded as some guaranty of responsibility and stability. Still in the last analysis it is the integrity and sound business judgment of the banker which afford to a mere depositor the assurance of the safety of his funds.

My doubts as to the validity of this provision have been somewhat weakened, though not entirely removed, by an expression of opinion (mere obiter, though it be) of the Court of Appeals in Musco v. United Surety Co., 196 N. Y. 459, 466, 90 N. E. 171, 134 Am. St. Rep. 851. The court there says:

"It is quite probable that if necessary we could find sufficient reason to justify the Legislature in distinguishing between trans-Atlantic steamship companies, almost necessarily possessing large capital and credit, and individuals of the class to which appellant's principal belongs who frequently might be expected to be without either."

This was said with reference to the "Wells Law" (Laws 1907, c. 185), which required a bond to be given by any person engaged in the business of selling transportation tickets in conjunction with receiving deposits of money for the purpose of transmission to foreign countries, and to the exemption from the provisions of that act of

"drafts, money orders and traveler's checks issued by trans-Atlantic steamship companies or their duly authorized agents." While this case was apparently decided primarily on the ground that the defendant, having voluntarily given the bond, thereby waived any objections to the constitutionality of the requirement, I attach due weight to the opinion of this high tribunal in commenting upon the propriety of a classification based on relative amounts of capital.

But I find far greater difficulty in reconciling with the test established by the federal Supreme Court that provision of the present statute which limits its application to those bankers whose clients' deposits are of an annual average of less than $500. There is nothing to which my attention has been called in the report of the Immigration Commission (which inspired this legislation) which directly warrants this distinction. It is sought to be justified by the learned counsel for the defendants on the theory that the persons found to have been subject to the abuse aimed at by the statute are largely recently arrived immigrants, persons of modest means—i. e., with general deposits averaging less than $500 annually—who are less likely to be able adequately to protect their own interests than would be persons who make or have larger deposits. This argument, however, strikes me as one not based on any substantial distinction, sound or unsound. Merely because the commission has found that a number of small bankers have absconded with the funds intrusted to them by modest depositors it does not follow that bankers may be lawfully classified under a state statute according to the annual average of individual deposits, and those enjoying large deposits be relieved from making public the details of their business and from the other presumably wisely imposed burdens of the act. Moreover, though this may be of minor importance, it is quite evident that a person may have a small deposit with a number of bankers. Finally, I find neither in the report of the commission nor in my own experience evidence that depositors of small sums are less intelligent, able, or zealous in protecting their interests than are other depositors. My impressions are rather to the contrary.

I have the highest appreciation of the good intentions and beneficent motives of the promoters and framers of this legislation, but in respect to the particular provision now under discussion I believe that the reasoning advanced for the classification is too speculative and the classification itself too adventitious to meet the test of constitutionality hereinabove set forth.

Moreover, relief is here sought by a plaintiff who is a "curb broker." It is true that defendants do not concede in so many words that the statute covers his case; but the plaintiff so alleges, and it is not denied, and the argument has proceeded before me on the theory that the provisions of the act do indeed cover his business. None of the facts adduced by the Commission of Immigration in its report, none of the considerations relating to inexperienced foreigners recently arrived, and none of the many other distinctions which correctly or incorrectly are attributed to immigrant depositors with private bankers have any relation to customers of brokers. Confining myself, there-

fore, strictly to the merits of the application now before me, I am compelled to hold that there is no reason, sound or unsound, for imposing upon brokers a requirement of wealth or a classification based upon the amount of the average annual deposits of their customers. I believe, too, that plaintiff's objection that the act invests the Comptroller with a purely arbitrary discretion is good. The language of the act (section 25) is:

"After notice of the application shall have been so posted for a period of two weeks, he (the Comptroller) may, in his discretion, approve or disapprove the application."

It must be conceded, of course, as was done in People ex rel. Lieberman v. Van de Carr by the Appellate Division of this court (81 App. Div. 128, 80 N. Y. Supp. 1108), by the Court of Appeals (175 N. Y. 440, 67 N. E. 913, 108 Am. St. Rep. 781), and by the Supreme Court of the United States (199 U. S. 552, 560, 26 Sup. Ct. 144, 50 L. Ed. 305), that the Legislature may properly give "administrative discretion to local boards to grant or withhold licenses or permits to carry on trades or occupations or perform acts which are properly the subject of regulation in the exercise of the reserved power of the state to protect the health and safety of its people," and "that it is presumed that public officials will discharge their duties honestly and in accordance with the rules of law," and that the delegation of such power to an individual has been sustained in Wilson v. Eureka City, 173 U. S. 32, 19 Sup. Ct. 317, 43 L. Ed. 603, and Gundling v. Chicago, 177 U. S. 183, 20 Sup. Ct. 633, 44 L. Ed. 725. But, if I understand the principle and interpret correctly the views of the Supreme Court expressed in Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220, there must be in the act which confers the discretion or in the general character of the legislation, or at least in its history, some indication of the test or standard by which the discretion of the officer is to be exercised or controlled. It is true that in the case of Yick Wo the court was evidently somewhat influenced by the fact that the administration of the ordinance in respect of Chinese laundries was arbitrarily, and clearly designed to discriminate against the Chinese; but the court did not fail to condemn the character of the ordinance itself, in that it failed to point out any test as to the competency of the persons applying for a license or the propriety of the place selected for carrying on the business. It cites with approval City of Baltimore v. Radecke, 49 Md. 217, 33 Am. Rep. 239, where the Court of Appeals of Maryland said:

"It (the ordinance) lays down no rules by which its impartial execution can be secured or partiality or oppression prevented."

All these considerations, I think, are again emphasized by the fact that the act now under discussion covers the case of the plaintiff, a broker; and the emphasis is increased, or, to say the least, no aid is lent toward finding a standard by section 29e of the act, which reads:

"Nothing in this article contained shall be construed to require the Comptroller to make any inquiry or examination as to the responsibility or solvency of any applicant for a license or of any licensee hereunder."

It has occurred to me that it might be urged that the infirmity of the act, in so far as its terms cover the business of brokerage and like occupations, might be removed by the elimination of the words, "or for any other purpose" after the phrase "receiving deposits of money for safekeeping or for the purpose of transmission to another." But, on the one hand, the courts cannot amend legislation by limiting its scope through the elimination of one or more classes which it plainly described; nor, even if we could hold the act constitutional as to bankers and treat its provisions as to other occupations as separable, is there anything in the record before me to warrant the conclusion that the phrase without its obnoxious extension would be sufficiently descriptive of any one class which the Legislature may have had in mind.

Motion granted. Settle order on notice.