### LEE v. O'MALLEY et al.

(Supreme Court, Appellate Division, First Department. November 18, 1910.)

Injunction (§ 105*)—Restraining Prosecutions—Jurisdiction.

Equity will not, at the suit of an individual within Laws 1910, c. 348, regulating private banking and making a violation thereof a crime, restrain the prosecuting officers of the state from instituting prosecutions for a violation of the act on the ground of its unconstitutionality, since its unconstitutionality is a perfect defense to a prosecution thereunder.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 178, 179; Dec. Dig. § 105.*]

Appeal from Special Term, New York County.

Action by James Lee against Edward R. O'Malley and others. From an order enjoining defendants, until the further order of the court, from enforcing Laws 1910, c. 348, art. 3a, defendants appeal. Reversed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Louis Marshall (E. H. Letchworth, on the brief), for appellants.
Ernest R. Eckley, for respondent.

CLARKE, J.  Appeal from an order of the Special Term in an action brought against the Attorney General, the district attorney, the assistant acting as district attorney, and the Comptroller of the State for a permanent injunction.  The order states:

"It appearing to me that said article 3a, chapter 348, of the Laws of the State of New York of 1910, is unconstitutional, ordered, that the defendants, and each of them, their agents and servants, and all persons acting under their order, or within their authority or control, be and they hereby are, until the further order of this court, enjoined and restrained from enforcing the terms, penalties, and provisions of chapter 348 of the Laws of 1910 of the State of New York, article 3a thereof."

The complaint alleges that the said plaintiff now is, and for a number of years has been, a curb broker on the curb market; that as broker he has been in the habit of receiving deposits of money from various persons, to be applied, handled, invested, and transmitted in the regular course of his brokerage business; that he has thus built up a business and established a reputation upon which he depends for a livelihood.  It then alleges the passage of chapter 348, art. 3a, of the Laws of 1910.  After reciting many of the provisions of the act, the complaint proceeds:

"And it also provides that any one violating the provisions of the said act shall be guilty of a misdemeanor, and that any one failing to make or file the required reports shall forfeit to the people of the state the sum of $100 for every day that such report shall be delayed or withheld.  Plaintiff is informed and verily believes: That the said defendants are, respectively, Attorney General of the state of New York, district attorney of the county of New York, acting district attorney of the county of New York, in the absence of said district attorney, Comptroller of the state of New York, and the police commissioner of the city of New York."  [Note.—The action has been discontinued against Baker.]  "And that under the laws of the state of New York the duty devolved on the said officers by themselves or their inferiors or agents to enforce the provisions of the said act against this plaintiff and others, unless this court grants him the relief asked in this complaint, and that he is informed and verily believes that the said officers intend to enforce the provisions of the said act against him and others similarly situated. * * * That the act in question is unconstitutional and invalid, because under the guise of police power it would operate practically to prohibit the lawful business of your plaintiff and others, because it imposes an unlawful and arbitrary discrimination, and because it deprives your plaintiff and others of property without due process of law, * * * and that an enforcement thereof against him would result in ruining his business, deprive him of his property therein, and work him irreparable injury; whereas a continuation by your plaintiff in his business would, while the said act remains on the statutes, make him liable to repeated punishment, fines, penalties, etc.  That the said plaintiff has no adequate remedy at law."

In his affidavit plaintiff states that he trades and deals in stocks and other securities upon the New York curb and believes that he personally and his business as a broker come within the letter and meaning of the act hereinbefore referred to, and that the proper officers intrusted with the enforcement of said act are about to enforce the same against him.

The act (chapter 348 of the Laws of 1910) is entitled "An act to amend the general business law in relation to private banking and to repeal article 10 thereof relating to ticket agents."  It was passed as the result of an investigation by a commission appointed by the Gov-

ernor, and upon the report of said commission, to inquire into the condition, welfare, and industrial opportunities of aliens in the state of New York. The report disclosed a shocking condition of insecurity and fraud in the business of private bankers engaged in dealing with immigrants. The act regulates the business of private banking. It provides for a license fee of $50, for the giving of bonds, the making of deposits, the rendering of reports, and the keeping of books and records. It provides in section 27 that any person or partnership carrying on the business specified in section 25 of this article, without having obtained from the Comptroller a license therefor, or who shall carry on such business after the revocation of such license, or who disobeys certain other requirements of the statute, shall be guilty of a misdemeanor, in section 28 that any person who with any application shall swear falsely as to the amount of assets or liabilities, or in any other particular, or under section 29d shall swear falsely to any other statements, is guilty of perjury. Any person or partnership who shall fail or neglect to make the reports required shall forfeit to the people of the state $100 per day for each day it shall be withheld, to be recovered in an action in the name of the people. Section 29f provides that any licensee who shall violate any of the provisions of this article, the violation of which has not been expressly made a misdemeanor or a felony, shall be guilty of a misdemeanor; and section 29g, that the Comptroller shall establish a license bureau for the purpose of complying with the provisions of this article.

The learned court below has found the act to be unconstitutional, on the ground of unjust and unequal classification, in that bankers whose clients' deposits are of an annual average of less than $500 only are subject to the restrictive provisions of the act. He says:

"I think that depositors of such small sums are no less intelligent, able, or zealous in protecting their interests than are other depositors."

The court was also of the opinion that the objection that the statute invests the Comptroller with a purely arbitrary discretion in issuing the license was good.

We decline to pass upon the constitutionality of the act, for we are convinced that no cause of action is stated of which a court of equity has jurisdiction, and hence no injunction can be allowed.

The Special Term bases its authority to act on Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 Sup. Ct. 673, 39 L. Ed. 759. That case did not involve the question here under consideration. It was not brought against the executive officers of the government to enjoin proceedings under a law of the United States, but it was brought by a stockholder, on behalf of himself and all other stockholders of the defendant company, to enjoin the voluntary payment of the income tax by it, and Chief Justice Fuller, at the commencement of his opinion, said:

"The jurisdiction of a court of equity to prevent any threatened breach of trust in the misapplication or diversion of the funds of a corporation by illegal payments out of its capital or profits has been frequently sustained. Dodge v. Woolsey, 59 U. S. 331 [15 L. Ed. 401]; Hawes v. Contra Costa Water Co., 104 U. S. 450 [26 L. Ed. 827]. As in Dodge v. Woolsey, this bill proceeds on the ground that the defendants would be guilty of such breach of

trust or duty in voluntarily making returns for the imposition of and paying an unconstitutional tax, and also on allegations of threatened multiplicity of suits and irreparable injury. The objection of adequate remedy at law was not raised below, nor is it now raised by appellees, if it could be entertained at all at this stage of the proceedings, and so far as it was in the power of the government to do so the question of jurisdiction, for the purposes of the case, was explicitly waived on the argument. The relief sought was in respect of the voluntary action by the defendant company, and not in respect of the assessment and collection themselves. Under these circumstances, we should not be justified in declining to proceed to judgment upon the merits."

Wallack v. Society for Reformation of Juvenile Delinquents, 67 N. Y. 23, seems to me to be a direct and controlling authority. The complaint there alleged that the plaintiff was engaged in the theatrical business, managing Wallack's Theater; that under and by color of the provisions of chapter 836 of the Laws of 1872, which provisions plaintiff averred were illegal, void, and unconstitutional, the defendant society pretends and claims that plaintiff, before managing and conducting said place of amusement, shall apply for and receive from the mayor a license as required by said act, and under penalty, after refusal or neglect to take out said license and pay said fee, sued by said society to recover $100 for each performance, and that the said defendant threatens the legal proceedings mentioned in said act to restrain the exercise of plaintiff's business, and is about to institute said proceedings, unless the license be applied for and obtained. He claimed that he would suffer great and irreparable damage, and prayed an injunction. Andrews, J., writing for a unanimous court, said:

"We are not at liberty to enter into the consideration of the general question of the validity of the legislation in question. We are precluded from doing so by the objection taken in limine by the defendant, and which is fatal to the plaintiff's action, that, assuming the unconstitutionality of the act of 1872, the plaintiff is not, upon the facts stated in the complaint, entitled to an injunction. The general rule is that the court will not restrain a prosecution at law, when the question is the same at law and in equity. Wolfe·v. Burke, 56 N. Y. 118. * * * The unconstitutionality of the act of 1872 would be a perfect defense to a prosecution for the penalties given by·it, and the question as to the constitutionality of the act has not been determined. It would, doubtless, be convenient for the plaintiff to have the judgment of the court upon the constitutionality of the act before subjecting himself to liability for accumulated penalties. But this is not a ground for equitable interference, and to make it a ground of jurisdiction in such cases would, in the general result, encourage, rather than restrain litigation. Nor can the prosecution for the penalties be restrained in this action, on the ground that it is a suit in the nature of a bill of peace."

In Davis v. American Society for Prevention of Cruelty to Animals, 75 N. Y. 362, the court, by Earl, J., said:

"Whether a person accused of a crime be guilty or innocent is to be determined in a common-law court by a jury; and the people, as well as the accused, have the right to have it thus determined. If this action could be maintained in this case, then it could in every case of a person accused of a crime, where the same serious consequences would follow an arrest; and the trial of offenders, in the constitutional mode prescribed by law, could forever be prohibited. A person threatened with arrest for keeping a bawdy house, or for violating the excise laws, or even for the crime of murder, upon the allegation of his innocence of the crime charged and of the irreparable mischief which would follow his arrest, could always draw the question of

his guilt or innocence from trial in the proper forum. An innocent person, upon· an accusation of crime, may be arrested and ruined in his character and property, and the damage he thus sustains, is damnum absque injuria, unless the case is such that he can maintain an action for malicious prosecution or false imprisonment. He is exposed to the risks· of such damage by being a member of an organized society, and his compensation for such risks may be found in the general welfare which society is organized to promote. This action is absolutely without sanction in precedents or principles of equity."

In Delaney v. Flood, 183 N. Y. 323, 76 N. E. 209, 2 L. R. A. (N. S.) 678, 111 Am. St. Rep. 759, Werner, J., speaking for the whole court, after referring to the Davis Case, supra, said:

"If equity will not intervene in behalf of a concededly lawful business of a fixed and unchanging character to prevent the criminal prosecution of some alleged unlawful act in its conduct, how can such intervention be justified in a case where the business itself, even when lawfully conducted; exists by mere sufferance of law, or where it is of such a character that it may be lawful .or unlawful of him who conducts it? Such a situation as is presented in the case at bar is one which in its very nature cannot be adequately dealt with by a court of equity. * * *. The whole subject may be briefly summed up on the statement that we see nothing in the case at bar to take it out of the ordinary rule that equity will not interfere to prevent the enforcement of the criminal law."

See, also, Eden Musee Am. Co., Ltd., v. Bingham, 125 App. Div. 780, 110 N. Y. Supp. 210, and cases there cited.

In Fitts v. McGhee, 172 U. S. 516, 19 Sup. Ct. 269, 43 L. Ed. 535, where an action was brought against the Attorney General of Alabama and the solicitor of the Eleventh judicial circuit to enjoin their taking any steps under a statute of Alabama providing penalties in case of violation, on the ground that the said statute was repugnant to the federal Constitution, Mr. Justice Harlan said:

"It remains only to consider the case so far as the final decree assumes to enjoin the officers of the state from instituting or prosecuting any indictment or criminal proceedings having for their object the enforcement of the statute of 1895. We are of opinion that the Circuit Court of the United States, sitting in equity, was without jurisdiction to enjoin the institution or prosecution of these criminal proceedings commenced in the state court. This view is sustained by In re Sawyer, 124 U. S. 200 [8 Sup. Ct. 482, 31 L. Ed. 402]. It was there said: 'Under the Constitution and laws of the United States, the distinction between common law and equity, as existing in England at the time of the separation of the two countries, has been maintained, although both jurisdictions are vested in the same courts.' * * * Again: 'The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property. It has no jurisdiction over the prosecution, the punishment, or the pardon of crimes and misdemeanors, or over the appointment and removal of public officers. To assume such a jurisdiction or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses, or for the removal of public officers, is to invade the domain of the courts of common law, or of the executive and administrative departments of the government.' At the present term of the court, in Harkrader v. Wadley, 172 U. S. 148 [19 Sup. Ct. 119, 43 L. Ed. 399], we said: 'In proceeding by indictment to enforce a criminal statute, the state can only act by officers or attorneys, and to enjoin the latter is to enjoin the state.' Again: 'Much more are we of opinion that a Circuit Court of the United States, sitting in equity in the administration of civil remedies, has no jurisdiction to stay by injunction proceedings pending in a state court in the name of a state to enforce the criminal laws of such state.' Undoubtedly, the courts of the United States have the power,

under existing legislation, by writ of habeas corpus to discharge from custody any person held by state authorities under criminal proceedings instituted under state enactments, if such enactments are void for repugnancy to the Constitution, laws, or treaties of the United States. * * * But the existence of the power in the courts of the United States to discharge upon habeas corpus by no means implies that they may, in the exercise of their equity powers, interrupt or enjoin proceedings of a criminal character in a state court."

The objection that a court of equity had no jurisdiction to grant the relief prayed for was taken at the Special Term and is urged before this court. It follows, therefore, that the order appealed from should be reversed, with $10 costs and disbursements, the motion denied, and the injunction vacated, with $10 costs. All concur.

---

### In re LOWY.

(Supreme Court, Appellate Division, First Department. November 18, 1910.)

ATTORNEY AND CLIENT (§ 53*)—DISBARMENT—EVIDENCE.

In a proceeding against an attorney for unlawfully executing a general release of a claim of a client for personal injuries against a street railway, and concealing the settlement and failing to pay over any of the proceeds to the client, evidence *held* to require disbarment.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 75: Dec. Dig. § 53.*]

Application by the Bar Association of the City of New York to discipline or disbar John J. Lowy, an attorney. Application granted.

See, also, 122 N. Y. Supp. 1134.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

Einar Chrystie, for petitioner.
A. Joseph Geist, for respondent.