[S. F. No. 6055.   Department Two.—May 17, 1913.]

## STATE SAVINGS AND COMMERCIAL BANK (a Corporation), Appellant, v. ALDEN ANDERSON, S. P. YOUNG, and WILLIAM R. WILLIAMS, as Individuals and as Representing the State Banking Department, Respondents.

Bank—Constitutionality of Banking Act—Summary Seizure by Superintendent of Banks—Limitation of Ten Days on Right of Bank to Bring Action Enjoining Superintendent.—The provisions of section 136 of the State Banking Act (Stats. 1909, p. 115), in authorizing the summary seizure by the superintendent of banks of the property and business of a bank whenever he has reason to conclude that it is in an unsound or unsafe condition to transact the business for which it is organized, without action brought or judicial warrant for the taking, and in prescribing a limitation of ten days after such seizure within which the bank may bring an action to enjoin the superintendent from further proceedings, are not in contravention of the fourteenth amendment of the constitution of the United States prohibiting any state from depriving a person of his property without due process of law or denying him the equal protection of the law.

Id.—Regulation of Banking Within Police Power of State.—The business of banking has in the commercial development of the world become so incorporated into the business growth and prosperity of the country and so affects the commercial welfare and business interests of the people as to have become a proper and legitimate subject of legislative regulation by the state in the exercise of its police power.

Id.—Reasonableness of Regulation Only Limitation on Exercise of Power.—The business of banking being subject to the regulation by the state in the exercise of its police power, such power of regulation is supreme and subject to no limitation so far as the fourteenth amendment to the federal constitution is concerned, except that such regulation must be reasonable.

Id.—Fourteenth Amendment of United States Constitution—Not Designed to Interfere With Police Power.—The fourteenth amendment was never designed to interfere with the police power of the state to regulate for the public good on some particular subject which in the judgment of the legislature called for regulation. Any legislation to that end is not special in the sense that it is violative of the constitutional guaranty if it operates equally upon all persons and property under the same conditions and circumstances.

ID.—SUMMARY SEIZURE OF BANK A REASONABLE REGULATION.—It cannot be said that the initial seizure of the property and business of a bank is not a fair and reasonable measure to be adopted to effect the protection of the public welfare which is designed by it, and as the only limitation on the power of the state imposed under the constitutional amendment is that the regulations it makes shall be of that character, no constitutional right of the bank has been impaired thereby.

ID.—SEIZURE NOT DENIAL OF DUE PROCESS OF LAW—RIGHT TO BANK TO BRING ACTION CONTESTING SEIZURE.—The due process of law clause of the fourteenth amendment of the federal constitution is not violated because such summary seizure is authorized to be made without action brought and judicial warrant for the taking. Due process of law does not necessarily imply a regular proceeding in a court of justice or after the manner of such courts. It cannot be said that by reason of such initial seizure the bank is deprived of its property without due process of law, as the statute gives it an opportunity to invoke the aid of a court of competent jurisdiction as to the validity of the seizure and the right of the superintendent to hold the property, and if that opportunity is a reasonable one, then the right which the constitution guarantees has been in substance preserved to it.

ID.—LIMITATION OF TEN DAYS TO BRING ACTION IS REASONABLE.—In view of the legislative purpose, as disclosed by the Banking Act, to wind up unsafe and unsound banks as inexpensively and speedily as possible, it cannot be held that the limitation of the right of action by the bank to ten days after seizure is unreasonable.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. B. V. Sargent, Judge presiding.

The facts are stated in the opinion of the court.

Arthur Crane, for Appellant.

F. A. Cutler, F. R. Sweasey, and A. A. De Ligne, for Respondents.

LORIGAN, J.—This action was brought against the defendants, representing the state banking department, to recover the property of the plaintiff bank which had been seized and taken into their possession, and for an injunction against them *pendente lite.*

The complaint sufficiently discloses that the business and property of the plaintiff bank was seized by the defendant Anderson as superintendent of banks (defendant Young assisting as chief deputy) on July 17, 1909, and is now held by defendant Williams as successor to said Anderson as superintendent of banks, under a claim that said plaintiff bank when the seizure complained of was made had been found by said Anderson to be in an unsafe and unsound condition to transact or continue the banking business for which it was organized, and hence its business and property were subject to seizure by the superintendent of banks under the provisions of section 136 of the Banking Act of this state.

This action was commenced on July 15, 1911, two years subsequent to the alleged seizure made on July 17, 1909.

It is provided by section 136 of the Banking Act (Stats. 1909, p. 115), that:

"Whenever the superintendent of banks shall have reason to conclude that any bank is in an unsound or unsafe condition to transact the business for which it is organized, or that it is unsafe or inexpedient for it to continue business, the superintendent of banks may forthwith take possession of the property and business of such bank, and retain such possession until such bank shall resume business, or its affairs be finally liquidated, as herein provided."

It is further provided by the same section that:

"Whenever any such bank of whose property and business the superintendent of banks has taken possession as aforesaid, deems itself aggrieved thereby, it may at any time within ten days after such taking possession, and not thereafter, apply to the superior court in the county in which the principal office of such bank is located, to enjoin further proceedings; and said court, after citing the superintendent of banks to show cause why further proceedings should not be enjoined, and upon hearing the allegations and proofs of the parties, and determining the facts, may, upon the merits, dismiss such application, or enjoin the superintendent of banks from further proceedings, and direct him to surrender such business and property to such bank."

The defendants demurred to the complaint on the ground, among other things, that the right of the plaintiff to maintain its action was barred by the last provision of section 136

just quoted which prescribes that such action must be brought within ten days after taking possession of the property by the superintendent and not thereafter. The demurrer was sustained and judgment entered in favor of the defendants. This appeal is taken by plaintiff from that judgment.

It is not questioned on this appeal but that under section 136 of the Banking Act, treating its provisions as valid, the ruling of the court sustaining the demurrer of the defendants was not correct, but it is contended that the section in question is void as countervening the fourteenth amendment of the constitution of the United States prohibiting any state from depriving a person of his property without due process of law or denying him the equal protection of the law.

The specific points made in this attack by appellant are that the section in question is violative of such constitutional provision in this, that it commands an executive officer to seize property unwarrantably and without judicial author- ity,'' and ''in unwarrantably limiting the time for banks to bring action for the recovery of their property.'' These points are made by counsel for appellant in his brief in the concise language above quoted but are not followed by any discussion or elaboration of the propositions. We take it, however, that the particulars in which it is claimed that the section of the Bank Act in question is invalid are both in authorizing a summary seizure of the business and property of banking institutions without action brought against them and judicial warrant for the taking, and in prescribing a particular limitation upon the right of action by banks, pro- visions which do not apply to other corporations or indiv- iduals, and whereby an arbitrary and unwarranted discrim- ination—class legislation—directed solely against banks is made, amounting to a deprivation of their property without due process of law in violation of the constitutional guaranty.

There is nothing novel in the legislation of this state em- braced in our Banking Act, either in the provision for the summary seizure of the business or property by the superin- tendent of banks when it is found by him that such bank is unsound or in an unsafe condition to further transact a bank- ing business, nor any novelty in the provision for its liquida- tion or the particular limitation of ten days upon the right of action on the part of such bank. Our statute is taken from

that of the state of New York and our provisions as to initial seizure, liquidation, and limitation of action on the part of the bank are as therein contained.  Similar legislation exists in the states of Alabama, Massachusetts, Minnesota, Nevada, Oregon, South Dakota, Colorado, and Louisiana.  All these provide for summary seizure and liquidation and further provide a limitation on the right of action by the banks of from ten to thirty days after seizure.  Idaho, Kansas, Oklahoma, and Texas, while also providing for summary seizure and liquidation seem to provide no time limit within which suit shall be brought by the delinquent bank.  By act of Congress, applying of course only to national banks, initial seizure, liquidation and limitation of action to ten days is provided, and the District of Columbia adopts the same system as is provided for national banks.  We are not pointed to any decision, and our own examination has disclosed none, where it has been held that this regulation which seems to be so generally adopted by the states, has been held to be violative of the constitutional provision invoked by appellant.  As early as 1893 the Bank Commissioners Act of this state conferred upon the bank commissioners a similar power of seizure to that given to the superintendent of banks under the present Bank Act when they found that the bank was unsafe to continue the transaction of business.  In the case of *People* v. *Bank of San Luis Obispo,* 154 Cal. 194, [97 Pac. 306], in an appeal by the bank whose assets were summarily seized by the bank commissioners an attack was made upon the validity of the provision authorizing such seizure and on the same grounds urged here.  In disposing of that appeal it was deemed unnecessary to pass upon that point though respecting it the court said: "The provision in question has been a part of our law ever since March 26, 1895, and so far as we are advised no question has ever been made as to its validity except as the same has been made in this case.  In view of the well-settled doctrine that the business of banking is a proper subject of legislative control by the state in the exercise of what is known as the police power, and in view of the decisions as to what constitutes the judicial power that is vested exclusively in the courts under our constitution, and what constitutes due process of law under our federal and state constitutions, we are not strongly impressed by the argument

of learned counsel for defendant against the validity of this provision, but as already stated, we consider it preferable not to decide the question in a case where such a decision is clearly unnecessary.''

Under the rapid changes which have occurred in recent years in the industrial and economic world, enterprises and industries which were therefore considered mainly of a private character, have become essentially of a public nature and the changed conditions have called for regulations of a kind different from those that have theretofore sufficed. In that progress, banking, considered in early years as more or less of a private enterprise, has in the commercial development of the world become so incorporated into the business growth and prosperity of the country and so affects the commercial welfare and business interests of the people as to have become a proper and legitimate subject of legislative regulation by the state in the exercise of its police power.

With respect to the business of banking as being of a character which brings it within the regulation of the state, in the exercise of such power, it is said in *Schaake* v. *Dolley,* 85 Kan. 598–604, [Ann. Cas. 1913A, 254, 37 L. R. A. (N. S.) 877, 118 Pac. 80, 83] : ''Banks are indispensable agencies through which the industry, trade and commerce of all civilized countries and communities are now carried on. The banker is the universal broker over whose counter the exchanges of supply and demand are, in the final analysis, effected. The capital which he has invested and the returns which he receives upon it are insignificant in importance relative to the advantages which society at large derives from the conduct of the banking business, and the evil consequences of unsound banking are distributed between the banker and the general public in like proportion. Banking is not a business 'affected with a public interest' in the sense in which Lord Hale first used that expression in the treatise *'De Portibus Maris.'* But banking has ceased to be, if it ever was, a matter of private concern only, like the business of a merchant, and for all purposes of legislative regulation and control it may be said to be 'affected with a public interest.' The public patronage which the banker invites and receives is of such a character that he becomes in a just sense a trustee of the fiscal affairs of the people and of the state.''

On the same subject the supreme court of the United States in *Noble State Bank* v. *Haskell,* 219 U. S. 104–111, [Ann. Cas. 1912A, 487, 32 L. R. A. (N. S.) 1062, 55 L. Ed. 112, 31 Sup. Ct. Rep. 186, 188], states: "It may be said, in a general way, that the police power extends to all the great public needs. (*Camfield* v. *United States,* 167 U. S. 518, [42 L. Ed. 260, 17 Sup. Ct. Rep. 864].) It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare. Among matters of that sort, probably few would doubt that both usage and preponderant opinion give their sanction to enforcing the final conditions of successful commerce. . . . We cannot say that the public interests to which we have adverted, and others, are not sufficient to warrant the state in taking the whole business of banking under its control. On the contrary, we are of the opinion that it may go on from regulation to prohibition, except under such conditions as it may prescribe. In short, when the Oklahoma legislature declares by implication that free banking is a public danger, and that incorporation, inspection and the above described co-operation are necessary safeguards, this court certainly cannot say that it is wrong."

Declaring the same doctrine are *State* v. *State Bank & T. Co.,* 31 Nev. 456, [103 Pac. 407, 105 Pac. 567]; *State* v. *Richcreek,* 167 Ind. 217, [119 Am. St. Rep. 491, 10 Ann. Cas. 899, 5 L. R. A. (N. S.) 874, 77 N. E. 1085]; *Lee* v. *O'Malley,* 69 Misc. Rep. 215, [126 N. Y. Supp. 775]; *Engel* v. *O'Malley,* 219 U. S. 128, [55 L. Ed. 128, 31 Sup. Ct. Rep. 190].

The business of banking being therefore subject to the regulation by the state in the exercise of its police power, such power of regulation is supreme and subject to no limitation so far as the fourteenth amendment to the federal constitution is concerned, except that such regulation must be reasonable.

As said in *American Land Co.* v. *Zeiss,* 219 U. S. 65, 66, [55 L. Ed. 82, 31 Sup. Ct. Rep. 206]: "It is to be borne in mind that it has been settled (*Griffin* v. *Connecticut,* 218 U. S. 563, [54 L. Ed. 1151, 31 Sup. Ct. Rep. 132], and cases cited), that the fourteenth amendment does not operate to deprive the states of their lawful power, and of the right in the exercise of such power to resort to reasonable methods inher-

ently belonging to the power exerted. On the contrary, the provisions of the due process clause only restrain arbitrary and unreasonable exertions of power which are not really within lawful state power, since they are so unreasonable and unjust as to impair or destroy fundamental rights.''

In *State* v. *Clausen,* 65 Wash. 156, [37 L. R. A. (N. S.) 466, 117 Pac. 1101], the court says: ''The test of a police regulation when measured by this clause of the constitution is reasonableness as contradistinguished from arbitrary or capricious action. . . . Beyond this, however, the state may interfere wherever the public interests demand it, and in this particular a large discrimination is necessarily vested in the legislature to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests. . . . If, therefore, the act in controversy has a reasonable relation to the protection of the public health, morals, safety or welfare, it is not to be set aside because it may incidentally deprive some person of his property without fault, or take the property of one person to pay the obligations of another. To be fatally defective in these respects, the regulation must be so utterly unreasonable, and so extravagant in nature and purpose as to capriciously interfere with and destroy private rights.''

And in *Schaake* v. *Dolley,* 85 Kan. 598, [Ann. Cas. 1913A, 254, 37 L. R. A. (N. S.) 877, 118 Pac. 80] : ''When once a subject is found to be within the scope of the state's police power, the only limitations upon the exercise of the power are that regulations must have reference in fact to the welfare of society and must be fairly designed to protect the public against evils which might otherwise occur. Within these limits the legislature is the sole judge of the nature and extent of the measures necessary to accomplish its purpose.''

As further declaring this principle are *Engel* v. *O'Malley,* 219 U. S. 128, [55 L. Ed. 128, 31 Sup. Ct. Rep. 190] ; *Noble State Bank* v. *Haskell,* 219 U. S. 104, [Ann. Cas. 1912A, 487, 32 L. R. A. (N. S.) 1062, 55 L. Ed. 112, 31 Sup. Ct. Rep. 186] ; *Mutual Loan Co.* v. *Martell,* 222 U. S. 225, [Ann. Cas. 1913B, 529, 56 L. Ed. 175, 32 Sup. Ct. Rep. 74;] *Northwestern Trust Co.* v. *Bradbury,* 127 Minn. 83, [134 N. W. 513] ; *Cunningham* v. *Northwestern Imp. Co.,* 44 Mont. 180, [119 Pac. 554].

As is settled by the authorities the state has unquestionable power to adopt such measures respecting matters affecting the public welfare as it deems expedient and when it sees fit to regulate upon a matter which is within its police power its authority over the subject is plenary and can only be reviewed by the courts to the extent of determining whether the regulation is reasonable. The principle embodied in the fourteenth amendment was substantially incorporated into the constitutions of the states at the time the amendment was adopted "and it has never been regarded as incompatible with the principle equally vital, because essential to the business and safety of society, that all property in the country is held under the implied obligation that the owner's use of it shall not be injurious to the community." (*Mugler* v. *Kansas,* 123 U. S. 623, [31 L. Ed. 205, 8 Sup. Ct. Rep. 273].) The amendment was never designed to interfere with the police power of the state to regulate for the public good on some particular subject which in the judgment of the legislature called for regulation. When the state determines that some business which in its conduct affects the public welfare should be regulated in the public interest and safety, any legislation to that end in the nature of things must be special, but it is not special in the sense that it is violative of the constitutional guaranty if it operates equally upon all persons and property under the same conditions and circumstances. What the amendment prohibits as a denial of due process of law is invidious legislation; capricious and arbitrary legislation which discriminates favorably as to some and unfavorably as to others. But it does not prohibit legislation which while limited in its application is designed to subserve the public welfare and affects all persons alike within the sphere of its operation. Within the principles declared by these authorities and which control the consideration of the validity of legislation by the state enacted in the exercise of its police power, we are satisfied that section 136 of the Banking Act is open to none of the particular objections urged by appellant in support of its claims that the constitutional guaranty that one shall not be deprived of his property without due process of law is thereby violated.

As far as the act provides for the initial seizure of a banking business which is found unsound or insecure and its

immediate liquidation without action previously brought against the bank or judicial process issued directing the seizure, these are provisions which have obtained in the regulatory banking laws not only of this state for years past but in the large number of the states to which we have referred. Such legislation adopted so generally has come as the result of years of observation of the intimate relation of banking with the business world, the disastrous consequences of unsound banking and the necessity for prompt measures for the protection of the public therefrom. It is generally recognized, as it is clearly obvious, that it is the duty of the state to its people who are dealing with banking institutions of a *quasi* public nature to see that protection to the public is afforded by the immediate abatement of such institutions as have become unsafe or insolvent and whose further continuance in business is a fraud upon and a menace to the public, and that danger can only be effectually averted by prompt action on the part of the state. The state owes to the public the duty not only of providing for supervision and examination of banks but the added duty as a matter of public policy, if the conditions warrant, of summarily closing them up and terminating their existence. When the management thereof has brought them into a condition of unsafety or insolvency the public interest demands that on this condition being ascertained they should not be permitted to further hold themselves out as responsible institutions or be permitted to remain in a position to do so. Police regulations are only effective when provision is made for their prompt and summary execution and summary seizure and liquidation of unsafe banks can fairly and reasonably be justified on the ground of immediate danger to the public welfare in further permitting their business continuance.

In this view it cannot be said that initial seizure is not a fair and reasonable measure to be adopted to effect the protection of the public welfare which is designed by it, and as the only limitation on the power of the state imposed under the constitutional amendment is that the regulations it makes shall be of that character no constitutional right of the appellant has been impaired by such legislation.

Nor is the due process of law clause violated because such summary seizure is authorized to be made without action

brought and judicial warrant for the taking. Due process of law does not necessarily imply a regular proceeding in a court of justice or after the manner of such courts. As said in *Davidson* v. *New Orleans,* 96 U. S. 97, [24 L. Ed. 616] : "In judging what is 'due process of law' respect must be had to the cause and object of the taking, whether under the taxing power, the power of eminent domain, or the power of assessment for legal improvements, or some of these; and if found to be suitable or admissible in the special case, it will be adjudged to be 'due process of law'; but if found to be arbitrary, oppressive and unjust, it may be declared to be not 'due process of law.' "

It signifies, as said in *Wulzen* v. *Board of Supervisors,* 101 Cal. 15–20, [40 Am. St. Rep. 17, 35 Pac. 353], "such an exercise of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribed for the class of cases to which the one in question belongs."

The special case of banking institutions to which the legislation here in question is addressed is one falling within the class of cases subject to regulation by the state under its police powers and where the only restraint on that power is that in such regulation reasonable methods shall be adopted to accomplish the designed end in contradistinction to measures which are so unreasonable as to be in their nature arbitrary and destructive of fundamental rights. As we have pointed out the provision authorizing initial seizure without action brought is, considering the end to be attained thereby, not an unreasonable exercise of the power or manifestly unfitted to accomplish the purpose designed,—namely, of prohibiting an insecure or insolvent bank from continuing its business to the public injury. The initial taking authorized by the Bank Act is not intended to work a permanent divestment of the title of the bank to its property. The provision merely authorizes the superintendent to take temporary statutory custody of it. The power conferred on him is for the purpose of preserving the property for administration under the Banking Act. He takes and holds it as a statutory custodian for that purpose until either the bank brings an action to test the validity of his finding of its insecurity or unsoundness and under which he justifies the taking, or

through a failure to do within the time limited for that purpose the bank admits that his action in making the seizure was warranted and thereby consents to the liquidation of its affairs, or until in a suit brought by the bank the court enjoins further proceedings on the part of the superintendent and directs a restitution of the business and property of the bank. While the initial seizure is authorized under the act without suit brought and is justified as a matter of public policy for the reasons here given, it cannot be said that the bank is thereby deprived of its property without due process of law as heretofore defined. An opportunity is given the alleged delinquent bank to invoke the aid of a court of competent jurisdiction as to the validity of the seizure and right of the superintendent to hold the property, and if that opportunity is a reasonable one, then the right which the constitution guarantees has been in substance preserved to it.

In this regard, however, it is claimed that the limitation of the right of action by the bank to ten days after seizure is unreasonable. But, as is said in *Terry* v. *Anderson*, 95 U. S. 632, [24 L. Ed. 365] : ''In all such cases the question is one of reasonableness, and we have, therefore, only to consider whether the time allowed in this statute is, under all the circumstances, reasonable. Of that the legislature is primarily the judge; and we cannot overrule the decision of that department of the government, unless a palpable error has been committed. In judging of that, we must place ourselves in the position of the legislators, and must measure the time of limitation in the midst of the circumstances which surround them as nearly as possible; for what is reasonable in a particular case depends upon its particular facts. As was said in *Jackson* v. *Lamplire*, 3 Pet. 280, [7 L. Ed. 679] : 'The time and manner of their operation (Statutes of Limitation), the exceptions to them, and the acts from which the time limited shall begin to run, will generally depend upon the sound discretion of the legislature, according to the nature of the titles, the situation of the country, and the emergency which leads to their enactment.' ''

Tested by the rule quoted and considering that the purpose of the legislature as disclosed by the Bank Act is to wind up unsafe and unsound banks as inexpensively and speedily as possible, it does not appear to us that the limita-

tion complained of which tends to promote that purpose and which was primarily within the right of the legislature to enact, is open to the objection that it is unreasonable.

The consideration we have given to this matter embraces all the points as we understand them which appellant presents against the validity of this provision of the Bank Act, and we are satisfied that none of them is tenable. The act deals solely with a matter pertaining to the public welfare and within the police power of the state to regulate. These regulations have substantial relation to and are intended and reasonably designed to protect and safeguard the people of the state against insecure banking or the further continuance in business of such institutions of that character as have become unsafe. These regulations, while applying to the banking business alone, apply to all who are engaged in that business either as corporations or individuals; they are all within a class subject to control and regulation by the state; the regulations prescribed operate upon all without any discrimination, and within the legal rules declared for determining their validity are violative of no constitutional guaranty which the plaintiff has invoked.

The judgment appealed from is affirmed.

Henshaw, J., and Melvin, J., concurred.

Hearing in Bank denied.