[S. F. No. 6951. Department Two.—July 25, 1916.]

## ARTHUR CRANE, Appellant, v. STATE SAVINGS AND COMMERCIAL BANK (a Corporation), Respondent.

INSOLVENT BANK—COMPENSATION DENIED TO INTERLOPER FOR SERVICES AS DIRECTOR AND TRUSTEE.—On an appeal from an order refusing to fix the compensation of appellant for his alleged services as "director and trustee" of an insolvent bank that was in the possession of the superintendent of banks for purposes of liquidation, it is held, that the services for which compensation was claimed was an audacious effort by an interloper into the affairs of an insolvent corporation to loot it of some of the moneys due to its creditors, and that the order should be affirmed with damages for a frivolous appeal.

APPEAL from an order of the Superior Court of the City and County of San Francisco refusing to fix the compensation of a director and trustee of a banking corporation. George H. Cabaniss, Judge.

The facts are stated in the opinion of the court.

Arthur Crane, *in pro. per.,* for Appellant.

A. A. De Ligne, for State Superintendent of Banks.

HENSHAW, J.—This is an appeal from the order of the court refusing to fix the compensation of appellant, appointed "director and trustee of the State Savings and Commercial Bank, the defendant corporation, and with authority to pay the State license tax now due."

To an understanding of the controversy the following facts are pertinent and indeed necessary: The State Savings and Commercial Bank, a California banking corporation, had become so financially involved that, under the authority of the California Banking Act as it then existed, upon July 17, 1909, Alden Anderson, superintendent of banks, took possession of the property of the bank. That banking law gave the banking corporation or other person interested, ten days' time within which to contest the possession of the superintendent of banks, and this contest was never instituted. But upon the fifth day of November, 1909, this appellant instituted an action in his own name against this bank, whose assets and affairs then were and ever since have remained in the possession and under the control of the superintendent of banks and his successor, the bank commissioner, and against certain other defendants called stockholders. In this complaint he asserts that on January 18, 1909, he became a stockholder of the corporation by the purchase of two shares of its stock. He alleges that he is the only stockholder and that none of the defendants is a stockholder; thus owning all of the stock of the corporation he is in equity the sole owner of the corporation. He alleges that the directors and trustees of the corporation were so actively engaged in dissipating and wasting the assets of the corporation that if the superintendent of banks "had not taken possession of said estate from the said usurping directors and trustees of the said defendant corporation it would all have been wasted and dissipated." He next asserts that the total value of the remaining assets of the defendant corporation is the sum of $68,510.64, and that the total liabilities of the corporation amount to the sum of $134,334.59, and that there is thus left sufficient "to pay all creditors in the neighborhood of fifty per cent of their respective claims." He alleged that there are no directors or trustees of the corporation; that the corporation has failed to pay its license tax and is insolvent and has ceased to do business as a corporation, and prayed judgment "that the plaintiff is the sole beneficial stockholder of the said corporation; that plaintiff be appointed the sole trustee of the defendant corporation," and for general relief. Upon this complaint he secured *ex parte* an order of the superior court appointing him, as above indicated, "director and trustee of the State Savings and Commercial Bank, the defendant corporation, with authority to pay the state license tax now due, pending the trial or

other conclusion of the above entitled cause, or further order of this court." Thereupon, as appears from the report of this trustee, he, by virtue and authority of this order, accepted the "resignations and abandonments" of all other directors and trustees saving himself. He then transferred to Frank L. Tainter one share of stock, and to John H. Dixon another share of stock, and then appointed Frank L. Tainter and John H. Dixon to be with him the directors of the bank, further appointing Frank L. Tainter secretary of the corporation. Thereafter, at a "special meeting of the board of directors" appellant presented two transfers, one from M. D. Rainbow to himself for ten shares of the stock of the corporation, and another from Eliza J. Lyman to himself for five shares, and he caused these old certificates to be canceled and new certificates to be issued to him as the owner of fifteen shares. It is of course not explained how there could be fifteen or sixteen valid outstanding shares in contemplation of the complaint in which plaintiff asserted under oath that he was the sole stockholder and owned but two shares. However, he then proceeded to levy an assessment of ten dollars per share, immediately paying this assessment upon sixteen shares, while "director Frank L Tainter paid to himself as secretary the sum of ten dollars, and director John H. Dixon paid the sum of ten dollars to the secretary as his assessment. Total received $180." It was then resolved to "take $110 out of the funds in the secretary's hands to pay the State license tax." Later, upon the strength of this assessment, a delinquent list was published, the stock offered for sale, and "no bids being obtainable, each of the said certificates and amounts was bid in for the corporation by Arthur Crane, trustee and president." The affairs of the corporation being in this condition, the defendant bank, of which appellant was thus trustee and president, and Frank L. Tainter trustee and secretary, filed its answer to Crane's action, which answer was verified by Tainter. It denied certain of the allegations of Crane's complaint. Thus, it denied that if Anderson "had not taken possession of the assets on the 17th day of July all or any of them would have been wasted." It denied that there was only left of the estate sufficient to pay the creditors fifty cents on the dollar, and averred that the assets were one hundred and thirty thousand dollars and the liabilities only one hundred and four thousand dollars; denied that the corporation is insolvent, and denied that it had failed to pay its license tax or

had ceased to do business as a corporation. The answer then proceeded to set up the assessment of which we have spoken, and once more averred that "the only outstanding shares of stock in the defendant corporation are eighteen, on which the said assessment was paid, and which stand in the names, to wit: of Arthur Crane, 17 shares; of Frank L. Tainter, 1 share." Thereafter, on June 3, 1911, Crane filed a stipulation in the action, declaring that "every allegation contained in the answer of the defendant, the State Savings and Commercial Bank, is true," and stipulating "that judgment may be rendered in accordance therewith." On June 5th, two days thereafter, the trial court made so-called findings of fact that all the allegations contained in the answer were true; that the corporation has "duly and regularly levied an assessment of ten dollars per share on its capital stock, and that the only valid outstanding shares of stock are eighteen," of which Crane owns seventeen and Tainter one. The judgment declares that each party shall pay his and its own costs; and "(2) Pending further order of the court, said plaintiff, Arthur Crane, shall continue to act as trustee under the direction of the court, and under the supervision of the said stockholders. (3) The remuneration of the said trustee may hereafter be fixed by the court on notice and hearing duly given." On January 24, 1914, this appellant moved the court to fix his fees "for his services as such trustee, including services as attorney, to and including December 1, 1913." The State Savings and Commercial Bank, by Tainter, its secretary, promptly stipulated that Crane's motion should be granted and his remuneration fixed at two thousand dollars, which was the amount Crane himself sought. In the matter of services he made affidavit that he had instituted three actions, one in the circuit court of the United States, and two in the superior court of the state, for the purpose of testing the constitutionality of the seizure of the assets of the State Savings and Commercial Bank. He further stated that "notwithstanding he used due diligence and extreme care in all said legal work, his action in the circuit court was dismissed and the two actions in the superior court of the State of California were decided adversely to him." He instituted an appeal to the supreme court of the state of California and briefed and argued the cause there, and again losing his case secured a writ of error to the supreme court of the

CLXXIII Cal.—8

United States. At the time of the hearing of this motion the supreme court of the United States had not acted upon the writ of error, though it has since done so, and again the decision is adverse to this appellant. (*State Sav. etc. Bank* v. *Anderson,* 165 Cal. 437, [L. R. A. 1915E, 675, 132 Pac. 755], *State Sav. etc. Bank* v. *Anderson,* 238 U. S. 611, [59 L. Ed. 1488, 35 Sup. Ct. Rep. 792].) Upon the hearing of the motion the court denied it, "without prejudice to its being renewed if and when the appeal to the Supreme Court of the United States, referred to in the affidavit on file, is won by appellant therein." This last is the order from which the present appeal is taken.

What then is the case presented? It is an audacious, indeed a brazen, effort by an interloper into the affairs of an insolvent corporation to loot that corporation of some of the moneys due to its creditors. And what is the position of this appellant? Accepting at their face value every statement which he makes, and waiving the obvious inconsistency and falsity of some of them, as where in the one place he asserts that there are but two valid outstanding shares of the stock of the corporation and that he owns them both, and in the other that there are eighteen shares, of which he owns seventeen; or that the corporation is wholly insolvent and can pay but fifty cents on the dollar to its creditors, while elsewhere, and manifestly for the purpose of despoiling it, he alleges that it has twenty-five thousand dollars of assets above all its liabilities, waiving, we repeat, these and like considerations, passing by the fact, which must certainly be true, that the orders and judgment which the court made were unwittingly and improvidently made, being presented *ex parte,* and treating this appellant, as he asserts himself to be, the owner of this corporation, what, then, looking through form to substance, is the case presented? The corporation is unquestionably in insolvency and in process of liquidation. Without regard to the inutility of the services which he rendered to this corporation in the useless litigation which he prosecuted, the fact remains that under his own statement it was litigation prosecuted for his own benefit, and in its last analysis it is but the case of an insolvent whose assets are in the hands of a commissioner in bankruptcy prosecuting, outside of the bankruptcy court, valueless litigation seeking to take those assets away from the control of the bankruptcy court and asking remuneration for his abortive efforts from the assets in the control of the bankruptcy court. There was

no occasion, therefore, for the trial court to have made a conditional order touching the receiver's compensation. It would have been a perfectly appropriate order, under the circumstances, for the court to have declared that whatever compensation this trustee believed himself entitled to he could pay to himself out of his own personal assets, but could take no dollar of it from the assets of the insolvent bank.

In conclusion, this court has noted that this appellant has prosecuted numerous appeals to it, either in his own name, or in the name of one Alice Aalwyn, or in the name of the Aalwyn's Law Institute. For the most part these appeals have been of the most frivolous and foundationless character. A certain indulgence will be shown by every court to honest ignorance. But the time has passed when this court can consider that these appeals are prosecuted through an ignorance that is honest. We cannot control the pernicious activities of this appellant in the trial courts. We can, however, measurably control them in the matter of appeals to this court which he takes for harassment, vexation, and delay. The time has come when it is the manifest duty of this court to do this thing.

The order appealed from is therefore affirmed, and there is imposed upon plaintiff, Arthur Crane, a judgment of two hundred and fifty dollars damages for a frivolous appeal, which judgment is forthwith collectible by execution at the instance of A. A. De Ligne, for and on behalf of the respondent herein, and, when collected, will be added to the assets of the insolvent bank in the hands of the superintendent of banks for the benefit of the creditors thereof.

Lorigan, J., and Melvin, J., concurred.

Hearing in Bank denied.