Keating, J.
In early 1968, the Superintendent of Insurance undertook an examination of the loss reserve practices of Citizens Casualty Insurance Company (Insurance Law, § 28, subd. 1).* The examination was conducted by 17 experienced examiners who reported to the Superintendent that the company’s loss reserves were understated by over six million dollars and that, due to this error, the company was insolvent, as defined by section 93 of the Insurance Law, to the extent of four million dollars.
The .Superintendent did not adopt the examiners’ report, as provided in section 30, which would have permitted Citizens an opportunity to request an administrative hearing. Instead, he chose to institute suit in .Supreme Court, under article XVT of the Insurance Law, to rehabilitate the company. Sections 93 and 511 authorize the Superintendent to seek such judicial action if an insurer is found to be insolvent. Section 526 provides that the court at such a hearing shall either deny or grant the application to rehabilitate the company after a ‘ ‘ full hearing ’ ’. *412 At this hearing section 30 permits the Superintendent to introduce into evidence the report of examination as proof of the insurer’s insolvency.
At Special Term, the Superintendent offered in evidence the report of insolvency. Citizens, however, was not permitted to introduce any evidence in support of its contention of solvency, although the court did permit the company to cross-examine the two witnesses called by the Superintendent who testified to the procedures followed in compiling the report.
The issue presented by this appeal is whether Citizens was denied the statutory “ full hearing ” mandated by section 526 when it was prevented from introducing any evidence on the issue of solvency in a rehabilitation proceeding instituted by the Superintendent pursuant to article XVI.
The field of insurance falls within that sector of the economy extensively regulated by the State because the business practices of insurance companies have an immediate and substantial effect on the public (Matter of General Reinsurance Corp. v. Pink, 269 N. Y. 347, 351; Matter of Bean v. Stoddard, 207 App. Div. 276, 279, affd., 238 N. Y. 618; California Auto. Assn. v. Maloney, 341 U. S. 105, 109-110). In this regulatory scheme there is an undeniable need for the Superintendent to have available fast and flexible procedures to be used in supervising the industry. The desire of the Superintendent to have a summary procedure to protect the public from undesirable practices on the part of insurers, however, must be balanced against the necessity of according the party affected an adequate opportunity to be heard in response to the Superintendent’s charge (Rhode Is. Ins. Co. v. Downey, 95 Cal. App. 2d 220; cf. Title Guar. & Sur. Co. v. Idaho. [Allen], 240 U. S. 136, 141-142). When faced with the interpretation of a regulatory scheme, the judiciary should attempt to afford the affected party the fullest opportunity for a hearing consistent with the protection of the public interest. This is what due process requires. (See Matter of. Hecht v. Monaghan, 307 N. Y. 461; People ex rel. Copcutt v. Board of Health, 140 N. Y. 1, 6-7; Anti-Fascist Comm. v. McGrath, 341 U. S. 123,161-165 [Frankfurter, J., concurring].)
The Superintendent asserts that section 526 of the Insurance Law authorizes a summary proceeding by which he can take over the property of an insurer and conduct its business by *413 offering a report of insolvency and introducing evidence of the regularity of the procedures followed in compiling the report. He contends that the insurer can test the propriety of the intervention by instituting a subsequent proceeding under section 512 (subd. 3) to have the Superintendent removed as . rehabilitator.
The Superintendent in support of this interpretation of the Insurance Law refers us to State banking statutes of New York and other States, which grant the Superintendent of Banks power to take possession of bank assets without first providing an opportunity for the bank to contest the action. This power he equates with his authority under section 526. (New York Banking Law, §§ 606, 607; see, e.g., New Jersey Stat. Ann., § 17:30-1; Wash. Rev. Code Ann., § 48.31.190; Smith-Hurd 111. Ann. Stat., tit. 73, § 800.1; Purdon’s Penna. Stat. Ann., tit. 40, § 202.) The analogy is further extended by citing section 512 (subd. 3) as the tandem provision of the Insurance Law which saves the Superintendent’s intervention from any due process implication because, like the banking legislation, it provides for a hearing after the intervention when the merits of the Superintendent’s act can be adjudged. (State Sav. & Commercial Bank v. Anderson, 165 Cal. 437, affd. Per Curiam 238 U. S. 611. [The California banking legislation in issue in Anderson was modeled after the New York Banking Law].)
Though the suggested reading of the Insurance Law could certainly have been enacted by the Legislature, we conclude that the present provisions and the statutory framework do not support such an interpretation. If the Legislature had intended to give the Superintendent of Insurance the same powers as that of the Superintendent of Banks, the statutory provisions would have more closely paralleled one another.
Analysis of the provisions of the Insurance Law indicates that section 526 was not intended to be a summary proceeding as the Superintendent contends. None of the provisions contained in article XVI delineate the requirements of a full hearing. Nevertheless, use of the term “full hearing” itself engenders the notion of a hearing in which the parties will be permitted to introduce evidence at least in keeping with minimal due process requirements. (1 Cooper, State Administrative-Law 367 [1965]; see De Bierre v. Darvas, 22 A D 2d 550; *414 Morgan v. United States, 304 U. S. 1, 18-19 [1938]; Morgan v. United States, 298 U. S. 468, 480-481.) The language certainly indicates an intention that fundamental requirements of fairness be accorded which are the essence of due process. The requirement of a “ full hearing ’ ’ has obvious reference to the tradition of judicial proceedings in which evidence is received and weighed by the trier of the facts.
Moreover, the Legislature’s failure to define “ full hearing ” in an article XVI proceeding might have arisen because the proceeding was to be a judicial hearing, not an administrative one. By using ‘ ‘ full hearing ’ ’ the Legislature must be presumed to have intended that the procedures normally followed by judicial tribunals would be continued. This would appear reasonable in light of the fact that the Legislature, when dealing with administrative proceedings, specifically delineated the rights of a party in such a hearing. “ Every person affected shall be allowed to be present during the giving of all testimony, and shall be allowed a reasonable opportunity to inspect all adverse documentary proof, to examine and cross-examine witnesses, and to present proof in support of his interest ” (§ 23).
The procedures to be followed in any hearing, as mandated by due process, depend to a degree on the issues in dispute. (Matter of Heaney v. McGoldrick, 286 N. Y. 38, 45; Anti-Fascist Comm. v. McGrath, 341 U. S. 123, 162-163, supra [Frankfurter, J.]; United States v. Storer Broadcasting Co., 351 U. S. 192, 202-205.) In this case there is a dispute as to whether the insurer is insolvent within the meaning of the Insurance Law. The statute does not set forth in particular detail how solvency is to be determined. The statute merely defines insolvency as being that time when an ‘ ‘ insurer is unable to pay its outstanding lawful obligations as they mature in the regular course of business, as may be shown either by an excess of its required reserves and other liabilities over its admitted assets, or by its not having sufficient assets to reinsure all of its outstanding risks ” (§ 93; emphasis added).
The statute does not specify in great particularity how reserves are to be determined. Sections 73 and 326 simply require that the insurer provide for reserves in amounts estimated to cover all losses insured. These estimates are to be arrived at by taking into account the prior experience of the *415 company. In light of these provisions, it is clear that the question of sufficiency of reserves is not solely a question of statutory interpretation, but rather a factual determination to be arrived at by actuarial calculations. Accordingly, a hearing is necessitated at which the parties can introduce evidence in support of their respective contentions. (1 Davis, Administrative Law Treatise, § 7.02, p. 413; § 7.05; People v. Richetti, 302 N. Y. 290, 297; Matter of New York Water Serv. Corp. v. Water Power & Control Comm., 283 N. Y. 23, 31; Denver Stock Yard v. Livestock Assn., 356 U. S. 282, 287.)
The conclusion that an evidentiary hearing is required is amply supported by reference to the quasi-judicial type of hearing which the Superintendent himself must conduct if he desires to adopt a report of examination (§ 30). Robert Benjamin, a special commissioner appointed by Governor Lehman to investigate administrative adjudication in New'York, in discussing an administrative hearing which exemplified the wide-ranging latitude accorded an insurer, chose as his prime example a hearing brought about at the insistence of the insurer when a dispute arose as to the proper calculation of loss reserves. Benjamin reported:
“ The company sought to establish its claim'as to proper loss reserves by testimony of its actuary and of its auditor, whose report of audit was received in evidence * * * In addition to offering this testimony, company counsel stated, he would show by four familiar tests that the examiner’s reserves were excessive. * * *
‘ ‘ The facts upon which these tests were based were presented by the company’s actuary and auditor.”
The company was permitted full latitude in presenting proof in support of its objections. The hearing covered a period of five full days. About 600 pages of testimony were taken. (Benjamin, Administrative Adjudication in the State of New York, Insurance Department Monograph, p. 85 [1942].)
It is patently clear that, if the Superintendent had adopted the examiner’s report, Citizens could have availed itself of such an administrative hearing (§§ 30, 23). The Superintendent, however, brought this judicial proceeding claiming the company was insolvent due to its reserve practices. Undoubtedly, the factor of insolvency compels the Superintendent to *416 Seek a faster procedure than an administrative hearing after which a judicial proceeding would still have to be instituted. It is upon this alleged need for speedy action that the Superintendent bases his argument.
Nevertheless, a court should not be qtiiclt to find summary proceedings embodied in a statutory enactment unless the provisions clearly specify this course or the exigencies of the situation warrant no other response. It is evident from the prior discussion that there is no explicit legislative mandate for a summary proceeding. The issue then is whether there is a need to imply an authorization for such a procedure. We think not. The Superintendent has not shown that the statutory scheme is inadequate. Hirst, sections 626 and 512 (subd. 3) eliminate the preliminary step of all administrative hearing. Second, the statute provides an alternative for summary relief.
Sections 526 and 512 (subd. 3) are not the only sections which must be considered in order to determine whether the' Superintendent has adequate procedures to protect the public without having to interpret these sections as permitting a summary proceeding. Section 528 of article XVI authorizes the Superintendent, after he has instituted suit under the article, to apply for an injunction “ at any tíme ” before a Justice who “ may, without notice,” enjoin the company “ from the transaction of its business, or.the waste or disposition of its property until the further order of the court ’? It appears that the public would be adequately protected by an injunction during the period of the hearing under section 526 without having to permit the Superintendent to take possession of the assets before the insurer can have an evidentiary hearing. Hebert Benjamin, in his report of the administrative agencies in this State, voiced these incisive remarks about the present problem of according the Superintendent summary procedures: 11 Til instances where prompt action is necessary in the public interest, but where there may be doubt as to the advisability of adopting a summary administrative procedure, a possible alternative may be to authorize an administrative agency to bring a judicial proceeding for an injunction, making specific provision for tile issuance of temporary injunctions (see, e.p., Insurance Law, Section 34) ”. (Benjamin, Administrative Adjudication in New York State, p. 96 (1942]. hornier § 34 *417 [L. 1939, ch. 882], renum. § 35 by L. 1947, ch. 323, eff. March 24, 1947.)
The conclusion that an injunction would be a sufficient remedy to protect the public permits a more consistent reading of sections 512 (subd. 3) and 526, in light of the language employed, than does the Superintendent’s interpretation.
The Superintendent additionally urges, but not forcefully, that the full hearing mandated by section 526 actually took place because the expression “deemed insolvent ” employed in section 93 creates a conclusive presumption, and, therefore, any evidence as to the actual financial condition of the company was not germane to the issues before the court. This reasoning overlooks the fact that section 511 of the Insurance Law lists 13. other separate grounds, besides insolvency, as the basis upon which the Superintendent can move under section 526 to rehabilitate an insurer. The logic of the argument leads to a rather anomalous interpretation. There would have to be a full evidentiary hearing if the Superintendent moves on any of the other enumerated grounds in section 511, but not if the basis of his request is insolvency of the insurer. This interpretation is offered even though the other grounds specified in section 511 equally exhibit similar danger to the public.
For example, subdivision (e) authorizes rehabilitation if the insurance company “ is found, after an examination, to be in such condition that its further transaction of business will be hazardous to its policyholders, or to its creditors, or to the public ”. In a proceeding instituted under section 511 (subd. [e]) the hazards of delay are equally great as those encountered in insolvency, but still an evidentiary hearing is required. (Matter of People [International Workers Order], 305 N. Y. 258.) Certainly, the legislative scheme shows no indication that a proceeding brought on the basis of some other subdivision of section 511 should be treated in a different manner from insolvency. It would be a strained construction to hold that all the other specified grounds require full evidentiary hearings, but that the word ‘ ‘ deemed ’ ’ bars such a finding when the request for rehabilitation is based on insolvency.
One further point requires brief comment. The dissenting opinion would save the statutory scheme, from any constitutional *418 infirmity by permitting the insurer to seek review of the Superintendent’s determination of insolvency in an article 78 proceeding. This argument was not advanced by either party for good reason. The language of section 34 of the Insurance Law, upon which the dissent relies, was added in 1956. (Insurance Law, § 34, as amd. by L. 1956, ch. 932.) Prior to that amendment the insurer could not have sought review of a determination of insolvency by way of an article 78 proceeding. Therefore, to accept the reasoning of the dissent would require an admission that the statute was unconstitutional for over 50 years. We cannot accept the argument that the Legislature drafted a constitutionally deficient statute when a fair reading of the provisions establishes that there was no such infirmity.
Finally, if the only remedy open to an insurance company faced with a situation like that here is to resign itself to the appointment of a rehabilitator and then later bring a section 512 (subd. 3) proceeding, it is rather hollow relief. There should be a method whereby the propriety of the Superintendent’s action can be tested before rather than after the fact. In most cases the appointment of the rehabilitator would spell financial ruin for the company.
Since a ‘ ‘ full hearing ’ ’ should have been accorded the insurer, a subsidiary question arises whether Citizens’ offer of proof was sufficient to put solvency in issue.
While the Appellate Division rejected the contention that a proceeding under section 526 is not to be a full evidentiary hearing, the court nonetheless affirmed the finding that the offer of proof was insufficient. The court remarked: ‘ ‘ That Citizens might differ with the evaluation of certain assets, the methods of evaluation of others, or the omission of a potential asset * * * would not prove that the Superintendent’s determination of insolvency warranting rehabilitation was unsupported, nor that the court’s conclusion was error, even if the exact nature of the proceeding might not have been adequately understood by Special Term ” (30 A D 2d, p. 296).
The Appellate Division, in affirming the trial court, failed to perceive that neither the Superintendent nor the court had ever determined that Citizens was insolvent after a hearing in which evidence of both parties was received. The report offered to the trial court was merely an ex parte report which *419 contained the summary and conclusions of an examination. In this case the judicial rule that the court will accept the administrative act if it is found to be supported by a rational basis in the record also has no place. (Matter of Mounting & Finishing Co. v. McGoldrick, 294 N. Y. 104, 108.) No record was ever developed which would permit one to draw that conclusion.
At the hearing accorded the insurer it was prevented from introducing any contradictory evidence of solvency. Cross-examination of an adversary’s witnesses, no matter how extensive, is no substitute for the introduction of evidence. In a case where disputed questions of fact are in issue, it is up to the trier of fact to determine what actually transpired after a “full hearing ”. A determination cannot he adequately made and supported simply on the evidence offered by one party weighed against the other party’s offer of proof. As we said in Matter of Hecht v. Monaghan (307 N. Y. 461, 470): “ 1 To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of.law would have led to the same result because he had no adequate defense upon the merits.’ * * * (Coe v. Armour Fertilizer Works, 237 U. S. 413, 424) ”.
A violation of the Insurance Law must be proved before the Superintendent can intervene to rehabilitate a company. We cannot speculate how the insurer’s case would have developed, or how the Judge would have viewed the facts after the insurer was given the opportunity to present its case on a 11 full hearing ’ ’. It is sufficient to say in this case that the procedure adopted by the trial court prevented any opportunity for this evidence to be aired. Since the insurer was not given an opportunity to controvert the keystone of the Superintendent’s contention that the insurer was insolvent, we fail to see how the Appellate Division concluded that the insurer’s offer of proof was insufficient since the insurer’s specific objection to the hearing accorded would have preserved its right to appeal even if no offer of proof was made.
Consequently, the view of the Appellate Division that the Superintendent’s finding of insolvency, even if Citizens differed with it, “ would not prove that the Superintendent’s determina *420 tion of insolvency warranting rehabilitation was unsupported ” is incorrect.
One final point must be made concerning the argument advanced by the intervenors-appellants, two sellers of insurance for Citizens. The intervenors objected to part of the Superintendent’s petition against Citizens. They moved to have the objectionable paragraph stricken from the petition, and the court so ordered. Subsequently they offered to submit findings which the court rejected. They now claim that it was prejudicial for the court to refuse to determine the issues raised against them which the court struck from the petition. This proceeding is not one to vindicate private parties from unwarranted attacks by public officials. The allegation was stricken. This is all the relief to which they are entitled.
The order of the Appellate Division should be reversed and the case remitted for further proceedings in accordance with this opinion.

All sections hereinafter cited are from the Insurance Law unless otherwise specified.