Adolph C. Orlando, J.
This is a proceeding pursuant to section 511 of the Insurance Law. The petition alleges that the respondent, Citizens Casualty Company of New York, a domestic stock insurer, licensed to transact the business of fire, ocean marine and various casualty lines of insurance, is insolvent under section 93 of the Insurance Law. The petitioner further alleges that the respondent failed and refused to comply with an order of the Superintendent of Insurance to make good an impairment of its capital and with being found in such condition that its further transaction of business will be hazardous to its policyholders or to its creditors, or to the public. The petitioner, the State Superintendent of Insurance, seeks an order to rehabilitate.
The proceeding was originally tried in May, 1968 before the Honorable Peter A. Quinn, a Justice of this court, who found for the petitioner. The Court of Appeals reversed and remitted the case for further proceedings in accordance with its opinion (Matter of Stewart [Citizens Cas. Co. of N. Y.], 23 N Y 2d 407).
Special Term permitted the respondent to amend its answer in the original proceedings to allege a contention of solvency as of December 31,1968 and as of August 29,1969.
Early in 1968 the State Superintendent of Insurance undertook an examination of the loss reserve practices of Citizens Casualty Company of New York. Two examinations were conducted of the respondent insurer, both under the supervision of one Samuel Rosenberg, a senior examiner of the State of New *810 York Department of Insurance. One examination concerned itself with the period ending December 31, 1967 and the other for the period ending December 31, 1968.
The assets of the respondent company are not materially in dispute. The petitioner admits that the assets of the respondent as of December 31, 1968 were $15,346,844.84. The respondent alleges its assets to be $15,625,013.53 as of the same date.
The sole issue to be determined in this proceeding is the solvency or insolvency of the respondent insurer. In great measure that issue is bottomed upon the reserves as set by the company or as required by the petitioner. The large number of claims still undetermined either by settlement or suit and the inherent difficulty with respect to the setting of proper or adequate reserves place upon the court a twofold burden, one of statutory interpretation and the other of actuarial calculations. To over reserve has been said to be bad practice, to under reserve is said to be worse, to be exactly right is said to be a miracle.
Pursuant to the Insurance Law of this State, the Superintendent may proceed in one of two ways when in his opinion, based upon proper examination of an insurer, he finds that the insurer’s continuation in business will be hazardous to its policyholders and to its creditors or to the public. The Superintendent may adopt the examiner’s report and permit the respondent an administrative hearing (§30). On the other hand, the Superintendent may proceed by the commencement of a suit in the Supreme Court, pursuant to section 511. In the instant case he chose to proceed by the latter method.
Section 526 of the Insurance Law provides that the court shall either grant or deny the application after a full hearing and that the Superintendent may introduce into evidence the report of the examiner as proof of the insolvency. The petitioner having chosen the route prescribed by section 526, the respondent must be afforded a “ full hearing ” and the parties afforded at least the minimal requirements of due process. Judge Keating, writing for the majority in the Matter of Stewart (23 N Y 2d 407, 413-414) stated it as follows:
‘1 The Superintendent in support of this interpretation of the Insurance Law refers us to State banking statutes of New York and other States, which grant the Superintendent of Banks power to take possession of bank assets without first providing an opportunity for the bank to contest the action. This power he equates with his authority under section 526. (New York Banking Law, §§ 606, 607; see, e.g., New Jersey Stat. Ann., § 17:30-l; Wash. Rev. Code Ann., § 48.31.190; Smith-Hurd Ill., *811 Ann. Stat. tit. 73, § 800-1; Purdon’s Penna. Stat. Ann., tit. 40, § 202.) The analogy is further extended by citing section 512 (subd. 3) as the tandem provision of the Insurance Law which saves the Superintendent’s intervention from any due process implication because, like the banking legislation, it provides for a hearing after the intervention when the merits of the Superintendent’s act can be adjudged. (State Sav. & Commercial Bank v. Anderson, 165 Cal. 437, affd. Per Curiam 238 U. S. 611. [The California banking legislation in issue in Anderson was modeled after the New York Banking Law].)

“ Though the suggested reading of the Insurance Law could certainly have been enacted by the Legislature, we conclude that the present provisions and the statutory framework do not support such an interpretation. If the Legislature had intended to give the Superintendent of Insurance the same powers as that of the Superintendent of Banks, the statutory provisions would have more closely paralleled one another.

“ Analysis of the provisions of the Insurance Law indicates that section 526 was not intended to be a summary proceeding as the Superintendent contends. None of the provisions contained in article XVI delineate the requirements of a full hearing. Nevertheless, use of the term ‘ full hearing ’ itself engenders the notion of a hearing in which the parties will be permitted to introduce evidence at least in keeping with minimal due process requirements. (1 Cooper, State Administrative Law 367 [1965] ; see De Bierre v. Darvas, 22 A D 2d 550; Morgan v. United States, 304 U. S. 1, 18-19 [1938]; Morgan v. United States, 298 U. S. 468, 480-481.) The language certainly indicates an intention that fundamental requirements of fairness be accorded which are the essence of due process. The requirement of a ‘ full hearing ’ has obvious reference to the tradition of judicial proceedings in which evidence is received and weighed by the trier of the facts.
“ * * * By using e full hearing ’ the Legislature must be presumed to have intended that the procedures normally followed by judicial tribunals would be continued.” (Italics supplied.)
The petitioner in his brief submitted at the end of the trial urges that there is a presumption of “ continuing; insolvency ” once the Superintendent makes a determination that the insurer is insolvent and determines to proceed as he did in the instant case. The law is contra. The presumption, if there be one, is of solvency (see Richardson, Evidence [9th ed.], § 81, p. 56). The Superintendent urged a similar interpretation in the Matter of Stewart (supra) without success. The court there said (p. 417): “The Superintendent additionally urges, in>‘ *812 not forcefully, that the full hearing mandated by section 526 actually took place because the expression ‘ deemed insolvent ’ employed in section 93 creates a conclusive presumption, and, therefore, any evidence as to the actual financial condition of the company was not germane to the issues before the court. This reasoning overlooks the fact that section 511 of the Insurance Law lists 13 other separate grounds besides insolvency, as the basis upon which the Superintendent can move under section 526 to rehabilitate an insurer. The logic of the argument leads to a rather anomalous interpretation. There would have to be a full evidentiary hearing if the Superintendent moves on any of the other enumerated grounds in section 511, but not if the basis of his request is insolvency of the insurer. This interpretation is offered even though the other grounds specified in section 511 equally exhibit similar danger to the public,”
The Superintendent having proceeded in the Supreme Court for an order must prove the allegations in the petition. ‘ ‘ A violation of the Insurance Law must be proved before the Superintendent can intervene to rehabilitate a company” (Matter of Stewart, supra, p. 419). The petitioner attempted to meet this proof with the testimony of Samuel Rosenberg, the Senior Examiner of the department, and the two reports and the summary conclusions of the examination based upon the opinions of the examiners. He concluded that in his opinion the insurer was insolvent as of December 31, 1968. No other evidence was offered as to the present financial condition of the insurer except that in the opinion of the examiners the reserves should be materially increased to cover the remaining claims. It must be noted that the respondent moved at Special Term to amend its answer to cover the periods to December 31, 1968 and August 29, 1969.
The respondent has not written any policies of insurance for about one year and a half. The amount of outstanding claims has been materially reduced. As of December 31, 1968 there were 5,091 claims open, as of December 12, 1969 there were 2,387 claims open. The assets of the insurer appear to have been increased yet despite all of that the petitioner alleges the need for a substantially increased reserve.
Respondent retained independent experts to make a survey and examination as to the adequacy of its reserves, and testimony was given by Michael P. Woods concerning the respondent’s records. His opinions cast doubt on the accuracy of petitioner’s appraisals of the reserves.
*813 Milton Altschul, chairman of the executive committee of respondent, testified that the reserve practices of the respondent were proper and that the experience as proven by the run-off of the claims settled or otherwise disposed of was in keeping with the company’s projections.
McGeettigan, called as respondent’s witness, testified that he is vice-president of Coordinated Coverage Oorp., and an agent of respondent. This witness made a report as to all of the claims handled by Coordinated Coverage Corp. He testified that over 1,000 claims had been settled within a period of a few months and that the agreement between Coordinated and Citizens was known to the department and that future reserve practices of Coordinated were proper and that the experience as proven by the run-off of the Coordinated claims settled or otherwise disposed of was in keeping with Coordinated’s projection.
Accordingly, it is the decision of this court after a full and complete hearing that the petitioner has failed to establish his entitlement to the relief sought. As trier of the facts, this court finds that the evidence adduced by the respondent is no less credible than that adduced by the petitioner. Under such circumstances the petitioner has failed to sustain the burden of proof, and the petition is dismissed.