603 A.2d 964

SAMUEL F. FORTUNATO, COMMISSIONER OF INSURANCE OF THE STATE OF NEW JERSEY, AND HIS SUCCESSIONS IN OFFICE, PLAINTIFF–APPELLANT, v. NEW JERSEY LIFE INSURANCE COMPANY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued August 20, 1991—Decided August 27, 1991.

Before Judges ASHBEY and BROCHIN.

*Donald Parisi,* Deputy Attorney General, argued the cause for appellant Commissioner of Insurance (*Robert J. Del Tufo,* Attorney General; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Bernard M. Flynn,* Deputy Attorney General, and *Donald Parisi,* on the brief).

*Lawrence B. Orloff* argued the cause for respondent New Jersey Life Insurance Company (*Orloff, Lowenbach, Stifelman & Siegel,* attorneys; *Lawrence B. Orloff,* of counsel; *Linda B. Lewinter* and *Lawrence B. Orloff,* on the brief).

*Gary S. Jacobson,* argued the cause for intervenor United Jersey Bank (*Kelley, Drye & Warren,* attorneys; *Gary S. Jacobson* and *Anthony Tomari,* of counsel; *Gary S. Jacobson,* on the brief).

The opinion of the court was delivered by

ASHBEY, J.A.D.

This matter comes before us on the emergency application of the Commissioner of Insurance of the State of New Jersey for leave to appeal from a Chancery Division August 2, 1991 order which denied his application to rehabilitate the New Jersey Life Insurance Company.

Pursuant to his authority under *N.J.S.A.* 17B:32–4 and *N.J.S.A.* 17B:32–6, the Commissioner of Insurance commenced a proceeding in the Superior Court seeking an order directing him to "rehabilitate" respondent life insurer, New Jersey Life Insurance Company, primarily on the ground that respondent had been "found, after examination, to be in such condition that its further transaction of business [would] be hazardous to its policyholders, or to its stockholders, or to its creditors, or to the public." *N.J.S.A.* 17B:32–6f.

The Commissioner claimed that respondent's financial statements misstated its financial condition, that four adjustments of its reserves for liabilities and of its assets were required to reflect its true condition accurately, and that those adjustments would disclose its insolvency. Respondent insurer defended the Commissioner's application on the ground that, under its reinsurance agreement with Republic Vanguard Life Insurance Company, Republic had assumed $25 million of New Jersey Life Insurance Company's potential liabilities, making the adjustments required by the Commissioner unnecessary. The Commissioner disapproved of the reinsurance treaty and challenged its effectiveness toward guarantying respondent's fiscal soundness. The judge ruled that there were issues of fact presented which required discovery and a hearing, and denied the Commissioner's application for a rehabilitation order.

On July 26, 1991, the Commissioner filed for summary judgment on his prior application on the grounds that, in the course of discovery, he had obtained documents proving that the insurer was "insolvent," an independent ground for the issuance of an order permitting him to "rehabilitate" the company. *N.J.S.A.* 17B:32–6a. On the return day of the Commissioner's order to show cause, it was stipulated that the Republic reinsurance treaty, originally disapproved of by the Commissioner, but which had supported respondent's claim of solvency, had been repudiated by the reinsurance obligor, and respondent insurer had twice acceded to that repudiation in writing.[1] New Jersey Life Insurance Company denied that the reinsurance agreement had been effectively terminated, and averred that arbitration of the issue, in accordance with the reinsurance agreement, would take place several months hence. Although

---

[1] It was undisputed that the reinsurance treaty was a primary focus of the department's original concern. Despite that fact and the ongoing departmental investigation, only June 1991 discovery produced from the insurer the repudiation agreements which were dated, respectively, January 1991 and March 1991. The judge characterized respondent's explanation for failure to disclose "beyond comprehension."

respondent contended that the asserted repudiation was subject
to further arbitration, respondent conceded that, if its written
agreement were valid, and pending the successful result of
arbitration to establish otherwise, technical insolvency existed.

The Chancery judge set the matter down for a hearing, ruling
that there were issues of fact concerning the insolvency and
concerning whether the insurer's condition made the further
transaction of business hazardous. Respecting interim re-
straints, however, the judge found as follows:

> If I weigh the likelihood of success, it would certainly seem to me that New
> Jersey Life has an uphill fight, No. 1, to be [sic] establish that this agreement
> with Republic Vanguard is still in effect and must continue in effect and also to
> establish that even if that's the case its condition is not hazardous.
>
> The Commissioner's concerns, the Commissioner's findings, are entitled to
> some weight by this Court. I don't think at this point we have to decide the
> outer limits and the precise degree of weight [to which] the Commissioner's
> findings are entitled, but the Commissioner has awesome responsibilities under
> this statute and his position with respect to the likelihood of success on a
> determination of insolvency or hazardous condition is not an unreasonable one
> and I am satisfied that the Commissioner has demonstrated a likelihood of
> success on the ultimate merits.
>
> I am also satisfied that particularly in view of the outflow of money over the
> last few months the likelihood of immediate and irreparable injury is substan-
> tial, indeed.

Accordingly, the judge restrained the insurer from selling
assets, soliciting new life insurance business, and from honor-
ing policy-holder loan or cash-surrender value applications. He
did not restrain the payment of death benefits, the renewal of
existing policies, or the insurer from making payments to
related companies with court approval. He continued an earlier
order (apparently not reduced to writing) placing a department
monitor in the business. Subject to those interim restraints,
the judge refused to grant the Commissioner's request that he
be directed "to rehabilitate" respondent. We grant leave to
appeal and reverse.

At issue is statutory construction. New Jersey's law
follows the *Uniform Insurers Liquidation Act. N.J.S.A.*
17B:32–4d provides that "[o]n the return of the [Commission-

er's] order to show cause, the court shall either deny the application or grant the application...." [2]  In support of his July application, the Commissioner first contended that respondent was currently insolvent because the documents disclosed in discovery established that the reinsurance agreement necessary to sustain its claim of continuing solvency were no longer in effect.  Alternatively, the Commissioner argued that even if there were a fact issue concerning whether an arbitration decision would save respondent from insolvency, nonetheless, the precariousness of the insurer's present condition established that "its further transaction of business will be hazardous to its policyholders, or to its stockholders, or to its creditors, or to the public...."  *N.J.S.A.* 17B:32–6f.  As the judge acknowledged, if the insurer's condition is "hazardous," the Commissioner's application for rehabilitation must be granted, whether or not it is currently insolvent.

When this matter came before us as an emergency motion for leave to appeal, the Commissioner submitted the certification of John A. Conover, Sr., Assistant Commissioner of Insurance, in charge of financial examinations and liquidations, concerning the effect of the order mandating delay, based on what had been presented to the trial judge in the course of the proceedings.  In his certification, Mr. Conover states:

> [T]he trial court's refusal to grant the Commissioner's summary judgment motion despite the uncertain reinsurance contract that would admittedly put New Jersey Life "in the red" if it does not survive arbitration proceedings, must be considered in the context of the well-known existing national crisis in the solvency of insurers.  The recent failures of Executive Life in California,

---

[2] While the New Jersey Act provides for the Superior Court to have original jurisdiction over the Commissioner's petition, *N.J.S.A.* 17B:32–2, it does not provide that the court must issue orders only "after a full hearing."  *Contrast, Stewart v. Citizens Casualty Co. of N.Y.,* 30 *A.D.*2d 293, 291 *N.Y.S.*2d 465, *rev'd,* 23 *N.Y.*2d 407, 244 *N.E.*2d 690, 297 *N.Y.S.*2d 115 (1968), *on remand,* 61 *Misc.*2d 809, 306 *N.Y.S.*2d 973 (N.Y.Sup.1969), *rev'd o.g.,* 34 *A.D.*2d 525, 308 *N.Y.S.*2d 513 (1970), *aff'd,* 27 *N.Y.*2d 685, 262 *N.E.*2d 215, 314 *N.Y.S.*2d 7 (1970), *cert. denied,* 401 *U.S.* 910, 91 *S.Ct.* 871, 27 *L.Ed.*2d 808 (1971), construing the New York insurance law.

Mutual Benefit Life here in New Jersey, and others across the nation underscore state insurance regulators' need to assume swift control of precarious life insurers before they meet a tragic demise. Indeed I have personally received many telephone calls, letters, and other communication from regulators and other interested parties praising the Commissioner for acting promptly and expeditiously in the Mutual Benefit Life action. State regulators from around the country have been roundly criticized for not acting swiftly in these situations. In that context, Judge Lesemann's decision below casts a pall on the Commissioner's regulatory powers that need to be exercised with alacrity both here and in other situations.

Before us, respondent insurer contends that the judge was correct in giving no deference to the Commissioner's decision that its continuing in business was "hazardous," because the court has statutory responsibility to make *de novo* findings of fact and conclusions of law. *N.J.S.A.* 17B:32–4. Thus, the existence of any issue of fact prevents granting the Commissioner relief. The State counters that the judge was incorrect because the courts must give deference to the Commissioner's expertise. *IFA Ins. Co. v. New Jersey Dept. of Ins.,* 195 *N.J.Super.* 200, 478 *A.*2d 1203 (App.Div.), *certif. denied,* 99 *N.J.* 218, 491 *A.*2d 712 (1984).

■ Insurance affects vital interests of the public. *In the Matter of the Plan for Orderly Withdrawal from New Jersey of Twin City Fire Insurance Co.,* 248 *N.J.Super.* 616, 632, 591 *A.*2d 1005 (App.Div.1991). Because of the factual posture of this case, we have no occasion to resolve the question of what standard governs the courts respecting the Commissioner's untested hypothesis that an insurer's continuing in business would be "hazardous," absent the undisputed facts in this case. We note merely that the Commissioner's determination that respondent's further transaction of business would be "hazardous" within the meaning of the controlling statute is a finding of fact. It is an informed prediction that respondent's financial condition, even if it is technically solvent, substantially threatens the justifiable interests of policyholders, stockholders, creditors, or the public. These are interests whose protection the legislature has confided to the Commissioner of Insurance,

whose determination in this case was neither arbitrary nor unreasonable.

Respecting the fact issue concerning respondent's insolvency, respondent admits being insolvent unless arbitration permits it to repudiate its agreement absolving its reinsurer and, further, requires its reinsurer to honor the reinsurer's repudiated agreement. However, respondent failed to demonstrate what facts resolved in its favor would lead to this result. It further failed to establish the likelihood of its establishing such facts at arbitration. That absence of proof left the undisputed facts which clearly supported the Commissioner's conclusion that the probability of insolvency made the continuation of the insurer's business "hazardous." Our review of the statute and the parties' submissions satisfies us, therefore, that the impending arbitration did not create a material issue of fact, and the Commissioner was entitled to the order he sought.

The order denying the Commissioner's application for an order directing him to rehabilitate respondent insurer is, accordingly, reversed.