734 A.2d 361 (1999)
Jaynee LaVECCHIA, Commissioner of the Department of Banking and Insurance, and Len Fishman, Commissioner of the Department of Health and Senior Services, Plaintiffs,
v.
HIP OF NEW JERSEY, INC., d/b/a HIP Health Plan of New Jersey, PHP Healthcare Corporation, and Pinnacle Health Enterprises, L.L.C., Defendants.
Superior Court of New Jersey, Chancery Division, Middlesex County.
Decided March 5, 1999.
*362 Josh Lichtblau, Deputy Attorney General, for the plaintiffs (Peter Verniero, Attorney General, attorney; Mr. Lichtblau and Michael Goldman, Deputy Attorney General, on the brief).
David Samson, Roseland, for the defendant HIP of New Jersey (Wolf & Samson, attorneys; Gage Andretta, on the brief).
LINTNER, P.J.Ch.
This matter arises as a result of a delinquency proceeding filed by the Commissioner of Banking and Insurance against New Jersey's fourth largest health maintenance organization ("HMO"), HIP of New Jersey ("HIPNJ"). After entering an initial ex parte restraining order pursuant to N.J.S.A. 17B:32-39(b), an Order of Rehabilitation was entered appointing the Commissioner as Rehabilitator of HIPNJ and authorizing her to reform and revitalize the insolvent HMO under the powers granted in the Life and Health Insurers Rehabilitation and Liquidation Act ("RLA"), N.J.S.A. 17B:32-31 to -91. The Rehabilitator, having made efforts to rehabilitate HIPNJ, now seeks an order of liquidation based upon N.J.S.A. 17B:32-45(a) and 17B:32-46(b)-(c).
HIPNJ is a federally qualified, not-forprofit HMO that has been licenced in New Jersey since 1980. HIPNJ operated as a group model HMO, whereby it entered into arrangements with medical groups to provide medical services exclusively to HIPNJ members in health centers funded by HIPNJ and operated by the medical groups. These medical centers made available primary care physicians, some specialists, administrative and medical staff personnel, record keeping, laboratory and other ancillary services. Medical services were performed at the health centers unless the patient's condition required an outside specialist or hospitalization in which case the patient would be referred to an outside provider network or hospital under contract with the HMO.
In July of 1997, HIPNJ entered into a series of transactions which restructured the manner in which it provided healthcare to its policyholders. HIPNJ sold most of its owned and leased real estate, personal property, and goodwill to PHP Healthcare Corporation ("PHP"), a for-profit Delaware corporation. At the same time, HIPNJ entered into a twenty year Health Service Agreement with Pinnacle Health Enterprises ("PHE"), a subsidiary of PHP, by which PHE assumed the obligation of the delivery and administration of healthcare services, including the management of the healthcare facilities and personnel, as well as the processing of claims and the payment of fees to outside providers. In return, HIPNJ paid PHE a capitation payment equal to 91.5% of premiums collected. HIPNJ retained the responsibility for *363 product development, pricing, premium collection, and marketing.
Within a short time, HIPNJ's financial condition began to deteriorate. While HIPNJ reported a net worth which was above the minimum required by N.J.A.C. 8:38-11.1 in the fourth quarter of 1997, by March 31, 1998 its net worth had fallen below the minimum requirement. As a result, the Department of Banking and Insurance requested HIPNJ to formulate and submit a business plan which would enable HIPNJ to meet its net worth requirements. Despite several meetings between representatives of HIPNJ, PHP, PHE, and the Department of Banking and Insurance, a business plan acceptable to the Department was not forthcoming. On September 8, 1998, the Commissioner issued a confidential order placing HIPNJ under Administrative Supervision pursuant to N.J.S.A. 17:51A-1 to -10. Notwithstanding administrative supervision, PHE failed to meet its obligations to process claims and make timely payments to healthcare providers. The amount owed by PHE for medical services and supplies rose to approximately $120,000,000 despite having received capitation payments in excess of $300,000,000. As a result of PHE's escalating debt, HIPNJ's net worth correspondingly spiraled downward and continued to hemorrhage.
On October 27, 1998, the Commissioner filed a verified complaint and order to show cause naming HIPNJ, PHP, and PHE as defendants seeking various restraints and the appointment of the Commissioner as Rehabilitator of HIPNJ with all the powers and authority permitted by N.J.S.A. 17B:32-43. An ex parte restraining order, maintaining the status quo and requiring HIPNJ, PHP, and PHE to show cause why HIPNJ should not be placed under the control of the Commissioner as Rehabilitator, was entered pursuant to N.J.S.A . 17B:32-39(b) with the return date set for November 9, 1998. The parties appeared on the return date and entered into a consent order reflecting their agreement to a complete standstill of any activity in the action through November 18, 1998, including a provision that PHE and PHP would refrain from filing for bankruptcy, during which time the parties would attempt to negotiate a recovery plan. The consent order further provided for an adjournment of the return date of the order to show cause and the scheduling of the defendants' motion to dissolve the restraints, both to be heard on November 20, 1998.
The parties failed to agree on a recovery plan. On November 19, 1998, PHP and PHE filed for Chapter 11 protection in the United States Bankruptcy Court in the District of Delaware.[1] As a result of the mandatory bankruptcy stay, 11 U.S.C.A. § 362, PHP and PHE abandoned their motions to dissolve the restraints and HIPNJ consented to the entry of an order declaring HIPNJ insolvent and appointing the Commissioner as Rehabilitator pursuant to N.J.S.A. 17B:32-42. After unsuccessfully attempting to rehabilitate HIPNJ, the Commissioner now petitions the court for an order of liquidation based upon her determination that further attempts to rehabilitate would be futile and would substantially increase the risk of loss to providers and policyholders. N.J.S.A. 17B:32-45(a). The Commissioner asserts two grounds for liquidation pursuant to N.J.S.A. 17B:32-46. She alleges that HIPNJ is insolvent and will remain insolvent for the foreseeable future and that the further transaction of business past March 31, 1999 would be hazardous to its members and providers.
HIPNJ opposes the petition citing N.J.S.A. 17B:32-45(a) which permits the directors of the insurer to defend against a petition for liquidation. HIPNJ, in its preliminary statement, contends that it should not be subject to an order of liquidation because its plan sets forth a viable alternative that will avoid disruption of care to *364 HIPNJ members, and will double the payment to pre-rehabilitation claimants over what they would otherwise receive if HIPNJ was ordered into liquidation.
HIPNJ submitted its rehabilitation plan for consideration by the Commissioner during the rehabilitation period. The Commissioner rejected the defendant's plan, setting forth her reasons in a letter of February 8, 1999 to Anthony Watson, Chairman and CEO of HIP Health Plans. The Commissioner takes the position that she has the discretion to decide whether to accept or reject the plan and that her decision should not be interfered with unless it is shown to be arbitrary or unreasonable. HIPNJ urges that this court must independently determine whether the plan submitted constitutes a defense to an order of liquidation, not simply whether the Commissioner abused her discretion in rejecting the plan. HIPNJ further seeks court approval of its plan as fair and equitable. The Commissioner argues that her decision to petition for liquidation is entitled to substantial deference and should be upheld by an order of liquidation unless that decision is shown to be arbitrary or unreasonable. The Commissioner also seeks a summary judgment that HIPNJ's plan does not raise a defense to liquidation as a matter of law.
As Rehabilitator, the Commissioner has the discretion to determine the manner in which rehabilitation will proceed and must submit a plan which is subject to approval, disapproval, or modification by the court based upon its judgment as to what is fair and equitable to all parties concerned. N.J.S.A. 17B:32-43(e). Thus, while the Commissioner's plan for rehabilitation cannot be implemented without a court finding that it is fair and equitable, deference is given to the means the Commissioner chooses to utilize in going forward with rehabilitation. As such, the Rehabilitator's determination concerning the manner in which to proceed will not be set aside unless it is shown to be arbitrary or unreasonable. Fortunato v. New Jersey Life Ins. Co., 254 N.J.Super. 420, 603 A.2d 964 (App.Div.1991). Likewise, the Rehabilitator's decision to reject the plan submitted by HIPNJ is also entitled to deference and is not subject to review unless it is arbitrary or unreasonable.
N.J.S.A. 17B:32-45(a) gives the Commissioner the discretion to file a petition for liquidation when she believes that further rehabilitation would be futile or substantially increase the risk of loss to the policyholders, creditors, or the public. By requiring that deference be given to the Commissioner's decision to seek a change in status of the insurer from rehabilitation to liquidation by the filing of a petition, N.J.S.A. 17B:32-45(a) is consistent with N.J.S.A. 17B:32-43(e), which gives the Commissioner the discretion to determine the manner in which rehabilitation will proceed.
While deference is to be given the Commissioner's decision to seek liquidation under N.J.S.A. 17B:32-45(a), such is not the case when it comes to entry of an order for liquidation in accordance with N.J.S.A. 17B:32-46. An order for liquidation is preceded by the filing of a petition setting forth grounds for liquidation. The petition filed under N.J.S.A. 17B:32-46 is subject to the insurer's right to plead defenses as granted by N.J.S.A. 17B:32-45(a). Once a defense is raised, the court must resolve any issues of fact in determining whether or not grounds exist for the entry of an order of liquidation. For these reasons, the Commissioner's position that an order of liquidation must be entered absent a finding that her determination to seek liquidation is unreasonable or arbitrary is rejected. The defendant is entitled to a hearing on any issues of fact that exist concerning the grounds for liquidation.
In opposition to the grounds raised for liquidation, the defendant states that its rehabilitation plan represents a viable alternative that will avoid disruption of care *365 and could double the payments to prerehabilitation claimants over that which they would otherwise receive under the Commissioner's liquidation plan. While the defendant does not answer the actual grounds asserted by the Commissioner with a direct denial, it takes the position that under its plan HIPNJ will be rendered solvent and that the continued transaction of business will not be hazardous, but instead beneficial to the policyholders, public, and providers.
HIPNJ argued at oral argument that because rehabilitation preceded liquidation, the Commissioner is precluded from petitioning for an order of liquidation pursuant to N.J.S.A. 17B:32-46 and is limited to pursuing liquidation under N.J.S.A. 17B:32-45(a). Under this interpretation, the Commissioner would be precluded from raising insolvency as grounds for liquidation and HIPNJ would merely have to prove that further attempts at rehabilitation would neither be futile nor increase the risk of loss to creditors, policyholders, or the public. However, the RLA does not preclude the Commissioner from seeking an order for liquidation based upon the grounds set forth in N.J.S.A. 17B:32-46 during the Commissioner's attempts to rehabilitate. To the contrary, N.J.S.A. 17B:32-46(a) expressly permits a petition for liquidation "whether or not there has been a prior order directing the rehabilitation of the insurer." N.J.S.A. 17B:32-45(a) is not intended to designate the grounds necessary for entry of an order of liquidation. It is intended to provide a means by which the Commissioner as Rehabilitator can file a petition for liquidation when it is determined that further rehabilitation would be futile. The Commissioner may file a petition for liquidation alleging the grounds set forth in N.J.S.A. 17B:32-46 at any time.
For HIPNJ to succeed in its defense, the court must find that the plan submitted by HIPNJ renders it solvent in a reasonable period of time and that HIPNJ's continued transaction of business will not be hazardous to the policyholders, the public, and providers. If HIPNJ is able to prevail in its assertion that its plan precludes the entry of an order for liquidation, the court is obligated under the Statute to reject the Commissioner's petition for liquidation and reinstate the order of rehabilitation. The court would then direct the Commissioner to reconsider the defendant's plan and submit for review a new rehabilitation plan with any modifications deemed necessary that are consistent with the court's finding regarding HIPNJ's plan. Only then, after submission of the new rehabilitation plan, would the court determine if the new plan is fair and equitable. Therefore, it is premature to pass upon HIPNJ's plan as fair and equitable.
N.J.S.A. 17B:32-46 provides:
The commissioner may petition the Superior Court for an order directing him to liquidate a domestic insurer or an alien insurer domiciled in this State on the basis:
(a) Of any ground for an order of rehabilitation as specified in [17B:32-41], whether or not there has been a prior order directing the rehabilitation of the insurer;
(b) That the insurer is insolvent; or

(c) That the insurer is in such condition that the further transaction of business would be hazardous, financially or otherwise, to its policyholders, its creditors or the public. (emphasis supplied).
N.J.S.A. 17B:32-46 makes it clear by use of the word "or" that any one of the enumerated grounds is sufficient to support the entry of an order of liquidation. Therefore, if the Commissioner prevails on any one of her asserted grounds, an order of liquidation must be entered.
In order to better understand the Commissioner's asserted grounds for entry of an order of liquidation, it is necessary to determine the intent of the legislature in establishing the grounds for liquidation. The two grounds asserted by the Commissioner, *366 as set forth in N.J.S.A. 17B:32-46(b) and (c), are that the insurer is insolvent, and the further transaction of business would be hazardous, financially or otherwise, to policyholders, creditors, and the public. If an insurer is insolvent, then further transaction of business would necessarily be hazardous financially to policyholders, creditors, and the public. However, the converse is not true. An insurer, though solvent, may still be in a financial position that further transaction of business would be hazardous to the concerned parties. In order to establish consistency and at the same time give N.J.S.A. 17B:32-46(b) and (c) their plain meaning, it follows that N.J.S.A. 17B:32-46(c) assumes a technically solvent insurer. Fortunato, supra, 254 N.J.Super. at 425, 603 A.2d 964. Therefore, if the Commissioner proves that the plan urged by HIPNJ does not render it solvent in the foreseeable future, there is no need to pass upon the question of whether further transaction of business is financially hazardous to the policyholders, creditors, or the public.
Both sides agree that HIPNJ's pre-rehabilitation debt totals approximately $120,000,000. HIPNJ's plan is predicated upon the court forgiving 40% of the prerehabilitation provider debt, an amount equal to approximately $48,000,000. HIPNJ contends that the total debt was not its making, but instead came about as a result of mismanagement by PHE, given the fact that it met its obligation to PHE by payment of an amount in excess of $300,000,000 in capitation payments during the pendency of its agreement with PHE, prior to PHE's filing for bankruptcy. HIPNJ acknowledges that it is nevertheless liable for the outstanding pre-rehabilitation debt notwithstanding the fact that the bankrupt PHE would be primarily responsible.
HIPNJ asserts that it is unfair to require it to pay the entire pre-rehabilitation debt because to do so would have the effect of requiring it to pay twice, given the capitation payments previously made. HIPNJ's position, however, does not take into consideration the fact that it would have a cause of action against PHE for breach of contract and/or indemnification, given PHE's position of primary liability, if PHE was a viable company. Nevertheless, HIPNJ predicates its entire plan on the ability of the court to partially forgive its pre-rehabilitation debt.
The court must determine whether the court or the Commissioner have the authority to discharge or partially forgive debt as part of an approved rehabilitation plan. While the defendant contends they do, nowhere is such power granted to the court or the Commissioner by the RLA. Indeed, a reading of the act leads to a contrary conclusion.
While N.J.S.A. 17B:32-43(e) places the obligation on the court to pass upon a rehabilitation plan so as to ensure it is fair and equitable to all the parties, nowhere does its provisions give the court the power to partially forgive debt in an effort to rehabilitate an insurer so as to keep it in business. Nor does N.J.S.A. 17B:32-50(a)(6)-(24), which delineate the powers of the Rehabilitator, grant the power sought by the defendant. N.J.S.A. 17B:32-71(a) makes it clear that when prioritizing the distribution of claims in liquidation, "each claim in each class shall be paid in full ... before the members in the next class receive payment." While N.J.S.A. 17B:32-49 provides for dissolution of an insurer upon entry of a liquidation order, thereby rendering its debts uncollectible, it does not provide for any procedure which would forgive debt and still allow for continued operation.
Finally, it must be pointed out that while there are several grounds listed in N.J.S.A. 17B:32-41 to support the filing of a petition for rehabilitation, including a determination that the continuation of business would be financially hazardous, insolvency is not one of the listed grounds. Because insolvency is listed as a ground for liquidation only, it is not consistent with the intent of the RLA to forgive the *367 debt of an insolvent insurer in order to render it solvent and thereby capable of rehabilitation. The clear intent of the act is to provide a means for rehabilitating an otherwise solvent insurer, even though the continuation of its business may currently be financially hazardous, in the hopes of returning it to economic health.
This court concludes that it does not have the power to partially forgive HIPNJ's pre-rehabilitation debt. Given this conclusion, HIPNJ by its own plan will remain in debt in the amount of $48,000,000 plus interest for the duration of its recovery period, i.e. the foreseeable future. As such, it is undisputed that HIPNJ will continue to be unable to pay its pre-rehabilitation obligations through the full term of its plan and beyond, and therefore remain hopelessly insolvent under the definition of insolvency in N.J.S.A . 17B:32-33 (unable to pay obligations when due).[2]
There are several factual issues presented by the parties concerning certain aspects of the plan proposed by HIPNJ. They are the following: (1) the medical expense ratio ("MER") under the plan; (2) the percentage MER when the 12 million dollar reinsurance is triggered; (3) whether the rehabilitation plan can be administered at the 6% cap; (4) whether New York Insurance Department approval is necessary and when it will be given; (5) which providers will stay with HIPNJ if the plan were implemented; (6) what rate network providers will be paid; and (7) the number of policyholders that remain in the HMO. These disputed issues of fact are implicated by the second ground listed in the Commissioner's petition for liquidation, that the continuation of business would be hazardous. They need not be addressed. Insolvency alone is sufficient to support the entry of an order of liquidation.
This court has determined that it is unable to discharge the pre-rehabilitation debt. HIPNJ is insolvent and will remain insolvent. As such, the Commissioner's petition for entry of an order of liquidation is granted.
NOTES
[1] PHE subsequently converted its filing from Chapter 11 to Chapter 7.
[2] While the statutory construction urged by the defendant that would limit the Commissioner to proof that further rehabilitation would be futile has been rejected by this court, it was conceded by the defendant at oral argument that given this court's determination that it is unable to forgive the $48,000,000 debt sought by HIPNJ's plan, HIPNJ remains hopelessly insolvent and therefore, given its financial status, further rehabilitation would be futile as a matter of law.